**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

———————————

No. 96-2604

———————————

Michael Chock,                      *
                                    *
            Appellant,              *
                                    * Appeal   from   the   United
States
      v.                            * District Court for the
                                    * District of Minnesota.
Northwest Airlines, Inc.,           *
                                    *
            Appellee.               *

———————————

        Submitted:  February 11, 1997

                                                        Filed:
 May 14, 1997

———————————

Before MCMILLIAN, HEANEY, and FAGG, Circuit Judges.

———————————

HEANEY, Circuit Judge.

     Michael Chock appeals from the district court's grant
of summary judgment for his employer, Northwest Airlines,
Inc. ("Northwest"), dismissing Chock's claims of race
discrimination and retaliation.  The district court
determined that Chock failed to produce sufficient
evidence of discrimination to go to a jury and lacked any
evidence of causation for his retaliation claim.  After
careful review of the record, we affirm.

After more than eight years of experience in the airline industry, Chock, an Asian-American, began working for Northwest in 1985 as a flight attendant. Between 1989 and 1992, he advanced within the company's Inflight Department, first with a promotion to an entry-level management position, followed by two subsequent promotions.

In a three-year period beginning in May 1992, Chock applied for and did not receive at least fourteen mid-level management positions. In each instance, he sought advancement to either a base manager or assistant base manager position at Northwest Inflight Departments throughout the country. Each position was filled by a non-Asian-American employee. The basic qualifications for the positions were minimal: the applicant needed the ability to become flight-attendant certified by the Federal Aviation Administration, a minimum of twelve months in his or her current position, and adequate performance reviews. Chock claims that he was qualified for every position for which he applied but that Northwest did not select him because of his race. For each hire, Northwest counters that the applicant selected for each position was more qualified or better suited for the position than Chock.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Chock initiated this action against Northwest claiming the company discriminated against him on the basis of race in violation of the Civil Rights Act of 1886 (Section 1981),

42 U.S.C. § 1981 (1994); Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2000e-17 (1994); and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363.01-363.20.  He later amended his complaint to include a claim for retaliation under both Title VII and the MHRA.  Northwest moved for summary judgment, which the district court granted.  Chock appeals.

We review the evidence Chock has presented de novo to determine whether the evidence, viewed in a light most favorable to him, creates any genuine issue of material fact that would render summary judgment inappropriate. See Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (court must draw all justifiable inferences in favor of the non-moving party). We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

A. Discrimination Claims

We analyze Chock's circumstantial evidence of race discrimination for all of his claims, both state and federal, under the McDonnell Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Roxas v. Presentation College, 90 F.3d 310, 315 (8th Cir. 1996) (Title VII analysis applicable to Section 1981 claims); Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 441 (Minn. 1983) (McDonnell Douglas analysis applicable to MHRA claims). Although the district court only assumed as much, Chock has established a prima facie case of race discrimination: As an Asian-American, he is a member of a protected class; he has applied and was qualified for several open positions; and he was rejected under circumstances giving rise to an inference of discrimination--in this case, none of the positions were filled by

Asian Americans.[1]  See Craik v. Minnesota State Univ. Bd., 731 F.2d 465, 469 (8th Cir. 1984).

In response to Chock's prima facie case, Northwest asserts that its screening and selection process for the management positions is race-neutral.[2]  It has also offered non-discriminatory explanations for each of the hiring decisions Chock has challenged.  With respect to Chock's first two applications, Northwest points out that Chock had been in his current management position for less than three months.  As to the other applications, many of the selected candidates had either a higher interview score or had more management experience than

---

[1]Northwest argues that Chock has not established a prima facie case of discrimination in at least twelve of the hiring decisions where the positions were filled with members of a protected class, either women or other racial minorities.  As this court has previously stated, however, we do not require a plaintiff to demonstrate replacement by a person outside any protected class for a prima facie case.  See Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994) (quoting Walker v. St. Anthony's Med. Ctr., 881 F.2d 54, 558 (8th Cir. 1989) and explaining that a woman discharged and replaced by another woman can establish gender-based discrimination).  Particularly where Chock has alleged discrimination against Asian-Americans, that women or other racial minorities were hired in his place does not harm his prima facie case.

[2]As Northwest explains the process, the Human Resources Department begins by reviewing resumes primarily for education, management, and industry experience.  Those candidates determined to have the best overall qualifications are selected for interviews, which are conducted by a panel of management and human resource personnel.  Each interviewer assigns a score from one to five for each applicant's answers.  The panel then meets to discuss the candidates, review their interview scores, often review psychological assessments, and recommend a candidate to the Vice President of Inflight Services.  The Vice President typically interviews the candidates and, in most cases, follows the panel's recommendation.

Chock.  As a general criticism of Chock's suitability for the management positions, Northwest states that Chock has had performance

problems, appears to lack focus in his career, and lacks a clear understanding of base- management responsibilities.

Because Northwest came forward with non-discriminatory explanations for the hiring decisions, the burden shifted back to Chock to present evidence of discrimination sufficient to create a question for the jury.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Chock challenges Northwest's proffered reasons for the hiring decisions primarily by asserting that he was more qualified than each person selected.[3]  Chock argues that the conflicting evidence of whether Chock or Northwest's

_____

[3]Chock also contests the admissibility of portions of the affidavits Northwest submitted in support of its summary judgment motion.  He claims that he moved to strike the affidavits, but that the district court did not rule on the motions before deciding the summary judgment issue.  As evidence of the district court's failure to consider his motions, Chock quotes the district court as stating that the question of admissibility was not before it.  We are troubled by Chock's misrepresentation of this matter to our court.  As the district court file indicates, one month prior to the summary judgment order from which Chock appeals, the court addressed and orally denied all of Chock's motions.  Moreover, Chock has taken the district court's statement out-of-context:  In stating that the question of admissibility was not before it, the court was referring to the authority Chock had cited to support the admissibility of his evidence of Northwest's past discrimination, not the admissibility of the challenged Northwest affidavits.  Finally, this appeal is limited to the district court's May 14, 1996 summary judgment order.  (See Notice of Appeal, June 12, 1996.)  Not only do we lack jurisdiction over the admissibility question, but because Chock did not order a transcript of the motion hearing, we have no basis on which to determine whether the district court abused its discretion in considering the contested affidavits.  See New England Anti-Vivisection Soc'y, Inc. v. United States Surgical Corp., 889 F.2d 1198, 1204 (1st Cir. 1989) (denial of motion to strike subject to review for abuse of discretion); United Steelworkers of America, Local 2116 v. Cyclops Corp., 860 F.2d 189, 203 (6th Cir. 1988) (same).

selected candidates were the most qualified for the positions raises material issues of fact requiring reversal of the district court's grant of summary judgment. Chock raised the identical argument before the district court, to which the court responded:

> Chock essentially asks the Court to decide what kind of qualifications [Northwest] must find suitable to fill a [base manager] or [assistant base manager] position and then to decide that he is as qualified as the selected candidate. The Court has neither the power nor the ability to make such a business decision. In light of the myriad of suits alleging discrimination and the courts' function in reviewing these claims, the Court finds it necessary to reiterate that the federal court does not sit "as a super-personnel department that reexamines an entity's business decisions."

(Dist. Ct. Op. at 5. (quoting Krenik v. County of Le Seuer, 47 F.3d 953, 960 (8th Cir. 1995)).

It appears from the above-quoted language that the court declined to review the relative qualifications of Chock and the persons selected for the positions at issue. We do not condone such an approach. Where, as here, the employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision. See Hase v. Missouri Div. of Employment Sec., 972 F.2d 893, 897 (8th Cir. 1993) (comparison of qualifications "could reasonably lead a trier of fact to infer that Defendant's proffered reasons were pretextual."); Pierce v. Marsh, 859 F.2d 601, 603 (8th Cir. 1988) (reviewing plaintiff's and successful candidate's qualifications to evaluate employer's "more qualified" defense). As we have recently clarified en banc, if such a comparison were to

9

successfully challenge the employer's articulated reason, it "may serve as well to support a reasonable inference that discrimination was a motivating reason for the employer's decision." Ryther v. KARE 11, No. 94-3622, 1997 WL 94025, at *3 (8th Cir. March 6, 1997) (en banc), petition for cert. filed, 65 U.S.L.W. 3694 (U.S. April 4, 1997) (No. 96-1571). On the other hand, a comparison that reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate would not raise an inference of racial discrimination. See Ledge-Myrtil v. Deere & Co., 49 F.3d 1308, 1309-11 (8th Cir. 1995) (determining comparable qualifications alone does not raise

an inference of racial discrimination after consideration of relevant qualifications); Pierce, 859 F.2d at 604 ("The mere existence of comparable qualifications between two applicants, one black male and one white female, alone does not raise an inference of racial discrimination.").

For each hire about which Chock complains, we have carefully reviewed the non-discriminatory reasons that Northwest has offered and Chock's challenges to Northwest's explanations. A comparison of Chock's qualifications with those of the candidates actually selected for the management positions gives us no reason to question Northwest's explanations for the hires. Our review indicates that each of the selected candidates was as qualified or more qualified than Chock under Northwest's objective criteria. Thus, we do not agree with Chock that his qualification argument raises material issues of fact.

Chock also attempts to challenge Northwest's proffered reasons for the hires by claiming that in several instances Northwest deviated from established promotion policies, granting special treatment to certain candidates while strictly enforcing the policies against him. Specifically, he argues that some candidates were selected for a promotion before they had completed one year in their current positions, whereas Chock was denied promotions based on the twelve-month requirement. While it is true that Northwest did not strictly enforce this twelve-month rule, we agree with the district court that Chock has presented no evidence that the rule was applied along racial lines. Moreover, on at least one occasion,

11

Chock was awarded a position before twelve months had passed since his previous promotion.

To support his claim that he was denied preferential treatment, Chock states that while some candidates were granted interviews, Northwest relied on notes from an interview of Chock taken more than three years previously to evaluate his applications.  In addition, Northwest continued to use Chock's three-year-old psychological profile, despite a warning by the company that performs the evaluations not to rely on a profile

that is more than three years old.  With respect to the psychological profiles, the three-year rule Chock contends Northwest preferentially applies is not even a Northwest policy.  More important, we again find no evidence in the record to indicate that Northwest's grant of interviews or permission to update the psychological profiles is racially-motivated.

Finally, Chock argues that Northwest's successive denials of his applications for promotion constitute evidence of a pattern of discrimination against him.  He attempts to buttress this argument by pointing to an African-American woman's involvement in a class-action discrimination suit against Northwest and a comment made by a former base manager that there was a greater percentage of minorities in flight-attendant positions than in management.

Again, we do not find this argument convincing. Although successive denials may provide evidence of discrimination, in light of the fact that Chock has applied for more than thirty different positions during his tenure at Northwest, it is no wonder that he has been passed over for many of them.  Sometimes he had not even been in his previously-awarded position for more than a few months before he began looking for a new one.  Chock's application record supports Northwest's position that Chock lacked focus in his career.  Moreover, we agree with the district court that Chock has not shown any connection between the other employee's complaints or the former manager's statement and any proof that Northwest discriminated against him in any of the instances of which he complains.

In sum, Chock has produced no evidence from which a reasonable jury could conclude that the reasons advanced by Northwest for the contested hires were pretextual. We agree with the district court that Chock's discrimination claims under both federal and state law cannot survive summary judgment.

B.  Retaliation Claim

Chock's allegations of Northwest's retaliation against him for initiating this lawsuit are similarly weak.  Chock contends that after he filed this discrimination claim, Northwest interfered with his pursuit of an MBA and forced him to end a living arrangement he had with his direct supervisor.  We are not convinced that either action complained of constitutes an adverse employment action.  Neither the MBA classes nor the living arrangement with his supervisor appear to have been benefits of his employment with Northwest.  In any event, with respect to Chock's pursuit of an MBA, there is no evidence that Northwest has interfered with his class attendance.  Human resource personnel contacted Chock's supervisors to discuss that Chock had changed his work schedule to attend the class on Fridays, but no formal action was taken against Chock.  To Northwest's knowledge, Chock continued to take Fridays off to attend class.  Similarly, no direct action was taken against Chock regarding his living arrangement with his supervisor.  Human resource personnel again discussed the matter with his supervisor, informing him that Northwest did not permit an employee to live with his or her direct supervisor due to the appearance of impropriety.  Based on the perceived threats of action by Northwest, Chock and his supervisor agreed to make other living arrangements.

Even assuming Northwest's conduct constituted adverse employment action against Chock, we agree with the district court that Chock has not demonstrated that the actions were causally related to the filing of his discrimination claim.  See Evans v. Pugh, 902 F.2d 689,

15

693 (8th Cir. 1990) (plaintiff alleging retaliation must demonstrate causal link between protected activity and adverse employment action).  Although Northwest's actions coincided temporally with the filing of Chock's lawsuit, Northwest's concern that Chock was missing time from work and that his living arrangement presented a conflict of interest for his direct supervisor provide reasonable, non-discriminatory explanations for Northwest's conduct, which Chock has not

successfully countered.  Thus, summary judgment on his retaliation claim was also justified.

## III.

Accordingly, we affirm the district court's grant of summary judgment for Northwest on all of Chock's claims.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.