# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2565

_____

| | | |
|---|---|---|
| Latonya Jean Whitley, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Peer Review Systems, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  June 14, 2000

Filed:  August 3, 2000

_____

Before MURPHY, HEANEY and MAGILL, Circuit Judges.

_____

HEANEY, Circuit Judge.

LaTonya Jean Whitley sued her former employer, Peer Review Systems, Inc. (PRS), claiming that she was terminated from employment on the basis of her race in violation of 42 U.S.C. § 1981 (2000) and Minn. Stat. § 363.03(2) (2000).  The district court granted summary judgment in favor of PRS.  Whitley appeals, and we affirm.

## BACKGROUND

PRS is an Ohio corporation that provides external reviews of the quality of health-care services. In 1995, PRS contracted with the State of Minnesota to set up a system to review the level of care that health maintenance organizations provided to Medicaid patients in Minnesota. PRS hired Whitley in October of 1995 to assist in the Minnesota contract.

Whitley was a high-level employee, responsible for implementing and overseeing PRS's Minnesota review system. She was expected to develop review tools by identifying quality-of-care indicators through her research. She further was expected to facilitate study groups, and administer site reviews.

Within months, it became apparent to Ohio PRS staff that Whitley was not completing her assignments on time. Concerned that they would not meet their deadlines for providing review materials to Minnesota, Ohio personnel increased their involvement in the Minnesota project. By January of 1996, Ohio staff members, including Janet Hosey, were intimately involved in the Minnesota project. Hosey scrutinized Whitley's work and criticized her attitude and performance.

During an orientation meeting in February of 1996, Whitley was disruptive, and made comments about Hosey. Whitley admitted her comments could be considered offensive. Following the meeting, Ohio PRS managers decided that Whitley's poor performance and insubordinate behavior warranted termination. She was fired on February 26, 1996.

## DISCUSSION

We review the district court's grant of summary judgment de novo. See Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). Although summary judgment is

to be used sparingly in employment discrimination cases, see Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994), it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim, see Chock v. Northwest Airlines, Inc., 113 F.3d 861, 865 (8th Cir. 1997).

Because Whitley's race discrimination claim is based on inferential rather than direct evidence, we employ the burden-shifting analysis used in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). To establish a prima facie case of race discrimination, the plaintiff must prove that she is a member of a protected class, was qualified for the position she held, and suffered some adverse employment action under circumstances giving rise to an inference of discrimination. See Chock, 113 F.3d at 863. Once the plaintiff has established a prima facie case, the employer has the burden of explaining its actions with legitimate, nondiscriminatory reasons. See Hicks, 509 U.S at 506-07. If the employer puts forth legitimate reasons for its actions, the burden shifts back to the plaintiff to show that the employer's stated reasons were a pretext for discrimination. See Chock, 113 F.3d at 863.

Whitley, as an African-American woman, is a member of a protected class. Further, she was terminated and replaced by a white woman, giving rise to an inference of discrimination. See id. However, she cannot satisfy her burden with regard to the second element of her prima facie case; that is, she cannot show that she was qualified for the position she held. In determining whether or not Whitley was qualified for her position, we do not simply examine her ability to perform. Rather, Whitley must demonstrate that she was actually performing her job at a level that met her employer's legitimate expectations. See Miller v. Citizens Sec. Group, 116 F.3d 343, 346 (8th Cir. 1997).

PRS produced specific evidence of Whitley's deficiencies, including her failure to promptly develop quality review procedures, design a quality review manual, and

adequately prepare for study-group meetings.  Lastly, Whitley was asked to participate in a trial run of a newly-developed review tool and to forward her results to PRS, which she did not do in a timely manner.  When she did comply, Whitley's results did not compare favorably to the results of the other participants.

Whitley admits some of these deficiencies.  Nevertheless, she directs us to broad, conclusory statements by herself and others that she was doing her job adequately.[1]  Such statements are insufficient to refute PRS's specific evidence of her poor performance.  See id.

Even assuming that Whitley had established a prima facie case, PRS still is entitled to summary judgment because it provided legitimate reasons for Whitley's termination.  As outlined above, Whitley was not adequately performing her job.  Further, PRS produced evidence that Whitley was disruptive in meetings and insubordinate in her dealings with PRS's home office.

Whitley argues that the reasons advanced by PRS as legitimate were merely a pretext for race discrimination.  In support of her view, Whitley contends that Hosey referred to her as "girl" and referred to African-Americans as "you people," and that both phrases are highly probative of racial bias.  When considered in context, however, neither of the statements support the racially-derogatory meaning she puts forth.  Whitley herself testified that when Hosey, then still in Ohio, introduced her by

---

[1]Whitley also points us to an affidavit of the State of Minnesota's contact person for PRS, stating that she had no complaints about Whitley's performance *vis-a-vis* the State.  However, there is no evidence that the affiant was in a position to judge Whitley's job performance at PRS.  See Mole v. Buckhorn Rubber Prods., 165 F.3d 1212, 1218 (8th Cir. 1999) ("Supporting affidavits from fellow employees who did not deal with [the plaintiff] on a systematic basis are insufficient to counter [the defendant]'s proof she was discharged because she did not meet its legitimate expectations.")

teleconference to Minnesota health care managers, Hosey sometimes referred to her as "girl," saying, for example, "I want to introduce you to the local girl." (Appellee's App. at 14.) Considered in context, the use of the word "girl" here is not evidence of racial derogation.

Hosey's reference to "you people" is similarly innocuous. By Whitley's own testimony, Hosey used this term during a heated argument with Whitley regarding Hosey's intense supervision of the Minnesota project. When Whitley asked Hosey why she was checking up on the Minnesota office so often, Hosey stated that she was concerned because "you people are late." (Id. at 17.) Whitley responded by defending the Minnesota office and its timeliness record. Thus, even Whitley understood this comment to refer to the Minnesota office rather than African-Americans. Although Whitley now asks us to give the use of "you people" a race-specific interpretation, such an interpretation is not supported by the record.

## CONCLUSION

For the above-stated reasons, we affirm the district court's grant of summary judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-