253 F.Supp.2d 1085 (2003)
Lanita CHERRY, Plaintiff,
v.
RITENOUR SCHOOL DISTRICT, Defendant.
No. 4:01 CV 01498 ERW.
United States District Court, E.D. Missouri, Eastern Division.
January 31, 2003.
*1087 Herman L. Jimerson, Clayton, MO, John J. Allan, Allen Law Offices, St. Louis, MO, for Plaintiff.
Thomas A. Mickes, Paul N. Rechenberg, DOSTER AND JAMES, L.L.C., Chesterfield, MO, Charles S. Elbert, Jennifer L. Forsythe, Kohn and Shands, St. Louis, MO, Phylecia B. Reed, Tueth and Keeney, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter comes before the Court upon Defendant's Motion for Summary Judgment [doc. # 32].

I. BACKGROUND FACTS[1]
Plaintiff Lanita Cherry, an African-American female, was employed as a probationary employee in the Ritenour School District during the 1999-2000 school year and most of the 2000-2001 school year. She acted as a school counselor at the Kratz Elementary School. Dr. Rita Wildhaber, Principal of Kratz Elementary, and Assistant Principal Kimberly McKinley supervised Plaintiffs work.
Principal Wildhaber hired Plaintiff in 1999.[2] During the 1999-2000 school year, Plaintiff received excellent recommendations from Assistant Principal McKinley, who understood Plaintiffs responsibilities and worked closely with her. According to Plaintiff, during her first year she did not work closely with Principal Wildhaber and Principal Wildhaber did not supervise her, in a practical sense. Principal Wildhaber gave Plaintiff a vague recommendation during the first year, which Plaintiff stated in her deposition was "because she was afraid I was going to leave the district." Principal Wildhaber recommended that Plaintiffs contract be renewed for the 2000-2001 school year.[3]
*1088 In October 2000, Principal Wildhaber spoke with Plaintiff regarding Plaintiffs job performance. On October 23, 2000, Principal Wildhaber advised Plaintiff that other staff members had complained about Plaintiffs performance as a counselor. Principal Wildhaber also expressed concern that Plaintiff was unwilling to help out during after school hours, Plaintiffs performance as a counselor was lower than previous counselors, Plaintiffs practice of keeping her door closed made her inaccessible, and Plaintiff failed to use her computer for counselor functions. Also on October 23, 2000, Assistant Principal McKinley counseled Plaintiff about completing students' special education referrals.[4]
On December 4, 2000, Plaintiff was given a Formative Data Form based upon scheduled observations and non-observed data. The Form cited Plaintiffs lack of organization of the special education program and indicated concerns about Plaintiffs lack of availability. Initially, Plaintiff refused to sign the form.[5] Principal Wildhaber met with Plaintiff on December 4, 2000, to review concerns about Plaintiffs lack of organization and the concerns stated in the Formative Data Form. On December 5, 2000, Plaintiff was given a Professional Improvement Plan, which directed Plaintiff to better organize and coordinate special education services.[6]
Plaintiff contacted her union representative, Gilbert Balderama, about the criticism offered by Principal Wildhaber. After January 2001, Plaintiff called Mr. Balderama on a weekly basis but never told Mr. Balderama that she was being treated unfairly because of her gender.[7] There is a dispute whether Plaintiff told Mr. Balderama that she was being treated unfairly because of her race. During Mr. Balderama's deposition, he was asked: "At any time during any of your written correspondence, your telephone calls, your meetings with Ms. Cherry, did she ever indicate to you that she thought she was being treated unfairly because of her race?" Mr. Balderama responded: "No, sir." Mr. Balderama later clarified that Plaintiff "felt like there was some discrimination there, and we don't deal with discrimination, and I say that we don't get into the issues ofand my suggestion was to her that if she felt there was discrimination there, that she needed to go [to the] EEOC, you know, file the EEOC paperwork, we had the paperwork in the office, we'd give it to her, and that was it." Later in the deposition, Mr. Balderama was asked whether Plaintiff ever used the word race during her complaints that she was being treated unfairly and Mr. Balderama replied: "That I can recall, no." Plaintiff disputes the contention that Plaintiff never told Mr. Balderama that she was being treated unfairly because of *1089 her race based upon Mr. Balderama's deposition testimony indicating that he sent Equal Employment Opportunity Commission ("EEOC") forms to Plaintiff. Plaintiff states that she gave a "strong indication" to Mr. Balderama that she was being discriminated against. In addition to contacting Mr. Balderama, Plaintiff faxed Personnel Director Catherine Cravens regarding Plaintiffs harassment concerns. She also discussed the issue with a union attorney.
On March 8, 2001, Plaintiff was given a second Formative Data Form. It cited Plaintiffs lack of coordination and scheduling of team meetings. It also cited Plaintiffs cancellation of and failure to reschedule meetings and her failure to utilize existing computer programs. Principal Wildhaber discussed the Form with Plaintiff on March 8, 2001, and Plaintiff received a second Professional Improvement Plan. The Plan was identified as "job-threatening." The Plan focused on Plaintiffs failure to maintain positive interpersonal relationships with school personnel. Principal Wildhaber discussed the Plan with Plaintiff.
Plaintiff received a performance evaluation from Principal Wildhaber on March 13, 2001. Plaintiffs organization skills and coordination of special education services were deemed as needing improvement. Plaintiff did not meet expectations on the criteria of demonstrating positive interpersonal relationships with personnel to accomplish the school district's vision, mission, and goals. On the March 13, 2001 evaluation, Principal Wildhaber recommended that Plaintiffs employment not be renewed for the next school year. Plaintiff admits that there were no racial comments made to her and that no one told her that duties and tasks were assigned to her because of her race.
On March 26, 2001, Plaintiff was notified that the Board of Education had voted not to re-employ her for the 2001-2002 school year. Mr. Balderama sent Plaintiff forms through which Plaintiff could file a grievance under the terms of the agreement negotiated between the Ritenour School District and the Union. Mr. Balderama testified in his deposition that the Board of Education handles grievances fairly. The Union did not file a grievance on Plaintiffs behalf because it was Mr. Balderama's opinion that the Ritenour School District did not treat people unfairly because of their race, gender, age, or disability.[8]
On March 30, 2001, Plaintiff called and notified the school that she would be staying home to take care of a sick child. Instead of staying home, Plaintiff went to a career fair. At her deposition, she could not remember where else she went before returning home on March 30, 2001. Plaintiff did not initially reveal her whereabouts on March 30, 2001. However, she later asked Principal Wildhaber whether Principal Wildhaber had seen her at the job fair and if she took Plaintiffs picture.[9]
Plaintiff states that she complained to management about being harassed. She testified in her deposition that she contacted the office of Catherine Cravens, the Assistant to the Superintendent, every time that she received a letter from Principal Wildhaber. Plaintiff states that some *1090 of the criticism of her work was given without a reasonable opportunity to meet expectations. Mr. Balderama was present during several of the meetings between Plaintiff and Principal Wildhaber. Mr. Balderama testified in his deposition that "[i]t seemed like expectations were changing. It seemed like Ms. Cherry would meet whatever was asked of her, and all of a sudden then something else, you know." He also stated that Plaintiff was not given sufficient time to remedy the concerns and some of the expectations were not reasonable because they were inconsistent and required Plaintiff to anticipate expectations which were unknown.
As evidence that Principal Wildhaber was unreasonable, Plaintiff points to a letter from a parent describing an incident where Principal Wildhaber "rudely busted" into Plaintiffs office and "demanded" that Plaintiff monitor recess. The parent also stated that Principal Wildhaber "rudely disrespected" Plaintiff by saying "So are you telling me you're not going, is that what you are saying, just tell me!" Plaintiff also points to a March 15, 2001 letter signed by Abbie Frank, a school psychologist, which states that Plaintiff was a dedicated counselor who worked very hard to complete her responsibilities.
Plaintiff contends that although Principal Wildhaber did not use racially tainted language, the perception of her prejudices were communicated to Plaintiff by other co-workers and students. On one occasion, Plaintiff was told that Principal Wildhaber said to another teacher, "You're black, maybe you can understand what he [a black student] is saying." Plaintiff also testified in her deposition that former secretaries, students, and parents complained about Principal Wildhaber's prejudices. Plaintiff heard from co-workers that Principal Wildhaber had made comments that represented a prejudiced mentality. Plaintiff also testified that when she told Principal Wildhaber that she had joined the Union, Principal Wildhaber responded: "You shouldn't have done that. They can't help you."
After being notified that her contract was not to be renewed, Plaintiff did not inquire as to the procedure for filing a grievance but was advised that she could fill out forms to initiate an EEOC investigation. She was not advised of any other administrative method for reporting discriminatory conduct of her supervisor. Plaintiff filed an administrative charge of discrimination with the EEOC in May 2001. Plaintiff was given a Right to Sue Notice, dated June 20, 2001. Plaintiff filed this case on September 18, 2002, against Defendant Ritenour School District. Plaintiff alleges that Defendant discriminated against her on the basis of her race and she was fired in retaliation for complaining about racial discrimination.[10]
In Count I of her Complaint,[11] Plaintiff alleges that she was intentionally discriminated against because of her race in violation of Title VII. She states that she performed her job beyond the expectation of Defendant Ritenour School District and that "no good reason could be given for Defendant's wrongful and discriminatory treatment of Plaintiff." Plaintiff alleges that less qualified, non-minority persons were placed in her position and given promotions and that similarly situated white employees were treated differently. As a result of racial discrimination, Plaintiff alleges *1091 that she was "denied a job, positions on committees, diverse experience, and opportunities to further her career for no good reason other than racial discrimination, and that said treatment has caused Plaintiff loss of income and job mobility." In Count II, Plaintiff alleges unlawful retaliation in violation of Title VII. Plaintiff alleges that she opposed racial discrimination, that she communicated her complaints to management, and that management investigated the discrimination. Plaintiff claims that "immediately after the dispute resolution, Defendant filed frivolous professional improvements" and that Defendant did not take action in response to her complaints of harassment and retaliation. She also alleges that she was denied a promotion, which was ultimately given to a white employee. Defendant moves for summary judgment on both Counts of Plaintiffs Complaint, claiming that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.

II. SUMMARY JUDGMENT STANDARD
Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), cited in Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 528-29 (8th Cir.2002) (affirming summary judgment on the plaintiffs negligence claim); Dammen v. UniMed Medical Center, 236 F.3d 978, 980 (8th Cir.2001) (citations omitted) (stating that "summary judgment will be granted if `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law'."). The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).
"By its terms, [Rule 56(c)(1) ] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no genuine issue of material. fact." Hufsmith v. Weaver, 817 F.2d 455, 460 n. 7 (8th Cir.1987) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added by Supreme Court)). Material facts are "those `that might affect the outcome of the suit under the governing law ....'" A genuine material fact is one such that "`a reasonable jury could return a verdict for the. nonmoving party.'" Id. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548, quoted in St. Jude Med., Inc. v. Lifecare Intern., Inc., 250 F.3d 587, 595 (8th Cir.2001).
The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. *1092 1988). The burden then shifts to the nonmoving party who must set forth specific evidence showing that there is a genuine dispute as to material issues. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. "In order to survive a motion for summary judgment,... the non-moving party must be able to `substantiate [the] allegations with sufficient probative evidence that would permit a finding in [the plaintiffs] favor based on more than mere speculation, conjecture, or fantasy.'" Habib v. NationsBank, 279 F.3d 563, 567 (8th Cir.2001) (affirming summary judgment on the plaintiffs Title VII claim because the plaintiff failed to set forth evidence allowing an inference of unlawful discrimination) (quoting Wilson v. Int'l Bus. Machs. Corp., 62 F.3d 237, 241 (8th Cir.1995)).
In analyzing summary judgment motions, a court must view the evidence in the light most favorable to the non-moving party. Morris v. Crawford County, 299 F.3d 919, 921-22 (8th Cir.2002). The nonmoving party is given the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. A court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." Kampouris v. St. Louis Symphony Soc., 210 F.3d 845, 847 (8th Cir.2000). The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." Id. Summary judgment is "used sparingly in employment discrimination cases," but will be appropriate if there is insufficient evidence to "create a jury question as to an essential element of [a] claim." Whitley v. Peer Review Sys., Inc., 221 F.3d 1053 (8th Cir.2000) (citations omitted), quoted in Cooksey v. Boyer, 289 F.3d 513 (8th Cir. 2002).

III. DISCUSSION
For summary judgment, Defendant argues that Plaintiff cannot establish a prima facie case on either her racial discrimination claim or her retaliation claim. Defendant therefore contends that it is entitled to judgment as a matter of law.

A. Discrimination on the Basis of Race
Title VII prohibits discrimination on the basis of race. 42 U.S.C. § 2000e-2(a). Unless there is evidence that directly reflects the use of an illegitimate criterion in an adverse employment decision,[12] a plaintiff must proceed with circumstantial evidence under the three-step analytical framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff alleging discriminatory discharge has the initial burden of establishing a prima face case of discrimination. See Gagnon v. Sprint Corp., 284 F.3d 839, 847 (8th Cir.2002); Hill v. St. Louis University, 123 F.3d 1114, 1119 (8th Cir.1997). If a plaintiff is successful in establishing a prima facie case, a rebuttable *1093 presumption of discrimination arises. Gagnon, 284 F.3d at 847. The burden then shifts to the defendant, who must articulate a legitimate, non-discriminatory reason for the adverse employment decision. Id. Once the employer articulates such a reason, the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus. Id. "At all times, the plaintiff retains the ultimate burden of proving that she was discriminated against on the basis of her race." Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir.1998) (citing Ruby v. Springfield. R-12 Public School Dist, 76 F.3d 909, 912 (8th Cir.1996)).
To establish a prima facie case of racial discrimination, Plaintiff must show that (1) she was a member of a protected group; (2) she was meeting the legitimate expectations of her employer or was qualified to perform the job; (3) she suffered an adverse employment action; and (4) there are facts that permit an inference of discrimination. See Taylor v. Southwestern Bell Tele. Co., 251 F.3d 735, 740 (8th Cir. 2001) (citing Ghane v. West, 148 F.3d 979, 981 n. 3 (8th Cir.1998)). There is no dispute that Plaintiff, an African-American, is a member of a protected group. There also is no dispute that Plaintiff suffered an adverse employment action when her contract was not renewed for the 2001-2002 school year. Defendant argues, however, that Plaintiff was not meeting Defendant's legitimate expectations and that there are no facts supporting an inference of discrimination. Defendant also argues that it has set forth a legitimate, non-discriminatory reason for terminating Plaintiffs employment and Plaintiff has failed to show pretext.

1. Evidence Permitting an Inference of Discrimination
Defendant argues that there is no evidence that permits an inference of discrimination and that Plaintiff has failed to identify similarly situated employees who were treated differently. Defendant contends that Plaintiff has therefore failed to create a genuine issue of material fact on the fourth element of her prima facie case. To raise an inference of discrimination, Plaintiff argues that there was a general atmosphere of discrimination during her employment. Plaintiff states that she was told by another teacher that Principal Wildhaber said to the other teacher: "You're black, maybe you can understand what he [a black student] is saying." Additionally, Plaintiff states in her Affidavit and deposition testimony that other employees, students, and parents complained that Principal Wildhaber was prejudiced. Plaintiff also avers in her Affidavit and her Verified Complaint that her replacement was Caucasian.
Plaintiff has not set forth any evidence detailing the identity or circumstances of the alleged atmosphere of discrimination, and the Court finds that Plaintiffs allegation regarding the complaints by other employees, students, and parents is conclusory and without evidentiary support. See JRT, Inc. v. TCBY Sys., Inc., 52 F.3d 734, 737 (8th Cir.1995) (stating that "a successful summary judgment defense requires more than argument or re-allegation; [the party] must demonstrate that at trial it may be able to put on admissible evidence proving its allegations"), cited in Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir.2001). The incident involving the black student is based wholly on hearsay evidence and appears to be a random remark; therefore, it also is not evidence of discrimination. Walker v. Wayne County, Iowa, 850 F.2d 433, 434 (8th Cir.1988) (holding that courts should only consider materials that are admissible at trial when making a summary judgment ruling), cited in Mays, 255 F.3d at 648. *1094 An inference of discrimination can be raised, however, when a person is replaced by someone not in the same protected class. Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir.2000) (citing Chock v. Northwest Airlines, Inc., 113 F.3d 861, 865 (8th Cir.1997)). Plaintiff has stated in a sworn statement that her replacement was Caucasian. While Plaintiff has not set forth any additional evidence of the replacement's qualifications or any evidence indicating that other minorities applied for the position but were not hired, the Court must take Plaintiffs sworn statements as true and draw all inferences in favor of Plaintiff at the summary judgment stage. Defendant has not rebutted the inference. See Thomas v. Runyon, 108 F.3d 957 (8th Cir.1997) (stating that the inference of discrimination created by a non-minority replacement was rebutted by the employer's evidence regarding an attempt to hire another minority). The Court therefore concludes that Plaintiff has sufficiently raised an inference of discrimination to satisfy the fourth element of her discrimination claim. Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir.1994) (stating that the "burden of establishing a prima facie case of disparate treatment is not onerous").

2. Legitimate Expectations
Defendant also argues that Plaintiff was not performing her job satisfactorily; therefore, she cannot prove the second element of her prima facie case, which requires evidence showing that she was meeting the legitimate expectations of her employer and was qualified for the job. Defendant cites to Whitley v. Peer Review Sys., Inc., 221 F.3d 1053 (8th Cir.2000), where the Eighth Circuit affirmed summary judgment in the employer's favor. In Whitley, the employer produced evidence of poor performance, including the failure to complete assignments in a timely manner. Id. at 1055. The Eighth Circuit stated that "[i]n determining whether or not [the plaintiff] was qualified for her position, we do not simply examine her ability to perform. Rather, [the plaintiff] must demonstrate that she was actually performing her job at a level that met her employer's legitimate expectation." Because the plaintiff only made "broad, conclusory statements" that she was performing her job adequately, she failed to rebut the employer's specific evidence that she was not meeting expectations. Id. Defendant argues that in this case, Plaintiff has not shown that she was in fact performing at a satisfactory level and summary judgment should therefore be granted.
In opposition, Plaintiff argues that her "overall" performance was adequate. Plaintiff points to a letter of recommendation by Abbie Frank, a school psychologist, and to her positive evaluations during her first year of employment with Defendant. She also states in her Affidavit that in her thirteen years with another school district, she never had a negative evaluation. Plaintiff also relies on Mr. Balderama's observation that the expectations "were changing" and that Plaintiff was not given sufficient time to remedy the concerns. Plaintiff additionally contends that Whitley, cited by Defendant in favor of summary judgment, is inapplicable because in this case there is an admission by Principal Wildhaber that she intended to sabotage Plaintiffs ability to find work elsewhere.
The Court notes that there are at least two lines of cases regarding the second element of a prima facie case of racial discrimination. In Whitley v. Peer Review Sys., Inc., 221 F.3d 1053 (8th Cir.2000) and Miller v. Citizens Sec. Group, Inc., 116 F.3d 343 (8th Cir.1997), the plaintiffs alleged that they were wrongfully terminated. In both cases, the Eighth Circuit required a showing that the plaintiffs were in fact meeting the employers' expectations *1095 to satisfy the prima facie case. In Kobrin v. Univ. of Minnesota, 34 F.3d 698 (8th Cir.1994) and Legrand v. Trustees of Univ. of Arkansas, 821 F.2d 478 (8th Cir.1987), however, the Eighth Circuit stated that the employees were only required to show that they were objectively qualified for the jobs. The plaintiffs in Kobrin and Legrand alleged wrongful failure to hire. Because Plaintiff in the instant case alleges wrongful termination, the Court will apply the more stringent standards set forth in Whitley and Miller. See also Evans v. Siegel-Robert, Inc., 139 F.Supp.2d 1120, 1125 (E.D.Mo.2001) (noting that "case law in the Eighth Circuit is split regarding the proper stage at which to consider performance deficiencies") (citations omitted).
Under the standard articulated in Whitley, to meet her burden on the second element of her racial discrimination claim Plaintiff must set forth evidence creating a genuine dispute of material fact that she was in fact meeting Defendant's expectations when her contract was not renewed. Whitley, 221 F.3d at 1055. Showing that she met expectations in previous positions or at some time prior to the adverse employment action is inadequate to meet Plaintiffs burden. See Miller, 116 F.3d at 346 (holding that one and two year old evaluations were "not evidence that [the plaintiff] was meeting [the employer's] legitimate expectations when [the employer] fired him because they are too far removed in time from the date of [the plaintiffs] discharge"). Plaintiff must also do more than allege that she believed she was meeting expectations or that other employees thought she was a good employee. Mole v. Buckhorn Rubber Prods., 165 F.3d 1212, 1218 (8th Cir.1999) (stating that affidavits from co-workers not in direct supervisory positions are not to be considered regarding Plaintiffs prima facie case); Whitley, 221 F.3d at 1055 (indicating that statements by the plaintiff or others that "she was doing her job adequately [were] insufficient to refute [the employer's] specific evidence of her poor performance"). Plaintiff must show by independent evidence in the summary judgment record that she "was actually performing" her job at the level specified by Defendant. Whitley, 221 F.3d at 1055 (citing Miller, 116 F.3d at 346); see, e.g., Schaffner v. Rush Presbyterian St. Luke's Hosp., 1996 WL 507246, at n. 2 (N.D.Ill. Sept. 4, 1996) (indicating that the second element of the prima facie case is considered from the employer's point of view, and conclusory statements without objective evidence to the contrary fails to satisfy plaintiffs burden) (citing Mills v. First Fed. Sav. and LoanAss'n of Belvidere, 83 F.3d 833, 843 (7th Cir. 1996); Sirvidas v. Commonwealth Edison, 60 F.3d 375, 378 (7th Cir.1995)).
Much of the evidence that Plaintiff submitted shows only that she met expectations in a previous job with a different employer and during her first year of employment with Defendant. The evaluations from the 1999-2000 school year are too remote to show that she was meeting expectations at the time her contract was not renewed. See Miller, 116 F.3d at 346. Plaintiffs statement that she never received a negative evaluation at her previous job is also too remote in time, and there is no evidence that Plaintiffs previous position had the same objective duties and responsibilities. See, e.g., Hines v. Metro Work Center, Inc., No. 991971DSDJMM, 2001 WL 705886, at *3*4 (D.Minn. June 19, 2001) (stating that the plaintiffs "attempts to rebut this record by stating that he was employed by others in a similar field and was not disciplined by those employers" was insufficient to establish a prima facie case). The recommendation from Ms. Frank was provided during the same month that the school board voted not to renew Plaintiffs *1096 contract. However, there is no evidence that Ms. Frank supervised Plaintiff. During her deposition, Plaintiff was asked who her supervisors were and Plaintiff did not name Ms. Frank. The only evidence of Plaintiffs working relationship with Ms. Frank is Ms. Frank's assertion that "[b]ecause I coordinate all intake evaluations for Special School District at Kratz, I have worked very closely with Ms. Cherry since the fall of 1999." There is no evidence that Ms. Frank knew and considered the objective requirements of Plaintiffs job as school counselor. See Mole v. Buckhorn Rubber Prods., 165 F.3d at 1218, cited in Whitley, 221 F.3d at 1055, n. 1. Therefore, the positive recommendation by Ms. Frank cannot support a finding that Plaintiff was meeting Principal Wildhaber's expectations.
Plaintiff also argues that Principal Wildhaber attempted to "sabotage" her ability to find other employment. Plaintiff stated in her deposition that Principal Wildhaber gave her a "vague" recommendation in approximately June 2000, prior to the documented decline in her performance in October 2000, because Principal Wildhaber "was afraid [she] was going to leave the district." In the summary judgment briefs, Plaintiff construes the vague recommendation as evidence proving an attempt to "sabotage all possibility of Plaintiff to secure future employment." The argument is wholly self-serving and is not supported by the record. While Plaintiff concludes that she was unable to obtain a job at the other districts she applied to because of Principal Wildhaber's recommendation, Plaintiff has failed to set forth any evidence of who Principal Wildhaber allegedly spoke with or what was communicated. In any event, the Court believes that the circumstances of Plaintiffs subsequent job search are irrelevant to a finding that Plaintiff was meeting the legitimate expectations of her employment when her contract was not renewed.
Plaintiff does not appear to argue that she was in fact meeting the objective criteria set forth by Defendant. There is no evidence that Plaintiff rescheduled meetings as requested, used the existing computer systems as required, improved her availability by keeping her door open and staying after school hours, or otherwise met the expectations referenced in her various performance evaluations. Defendant documented Plaintiffs performance over several months and Plaintiff has not sufficiently rebutted the negative evaluations by setting forth evidence that she was in fact meeting expectations. See Whitley, 221 F.3d at 1055. For these reasons, the Court concludes that Plaintiff has failed to show that she was meeting her employer's legitimate expectations during the 2000-2001 school year when her contract was not renewed, and Plaintiff failed to meet her burden to establish a prima facie case. Summary judgment in Defendant's favor is warranted.

3. Legitimate Non-Discriminatory Reason
After a plaintiff satisfies the prima facie case, the burden shifts to the defendant, who must "articulate a legitimate nondiscriminatory reason for the plaintiffs termination." Bogren v. Minnesota, 236 F.3d 399, 404 (8th Cir.2000). Defendant argues that even if Plaintiff had met her burden on her prima facie case, it has articulated a legitimate, non-discriminatory reason for not renewing Plaintiffs contract because Plaintiff was not meeting expectations.
Upon careful review of the record, it appears that Plaintiffs failure to meet Principal Wildhaber's expectations was well-documented. Plaintiff received a positive recommendation from Assistant Principal McKinley during the 1999-2000 school year and met expectations in all areas on a Summative Evaluation Report *1097 signed by Principal Wildhaber on April 13, 2000. However, from October 2000 through March 2001, Plaintiff was counseled about her performance by both Principal Wildhaber and Assistant Principal McKinley. She was first counseled in October 2000 regarding complaints by other staff members, her willingness to help out after school hours, her accessability, her failure to use computers, and her general performance compared to previous counselors. On December 5, 2000, Plaintiff was provided with a written plan detailing areas of improvement including organization, coordination of services, and availability. On March 8, 2001, she was given another written evaluation citing her lack of coordination and scheduling of meetings, her failure to reschedule cancelled meetings, and her failure to use existing computer programs. The evaluation also focused on a failure to maintain positive personal relationships with school personnel. A Summative Evaluation Form signed by Principal Wildhaber on March 13, 2001, indicated that Plaintiff needed improvement in the areas of organizing and coordinating special education services and she did not meet expectations on the criteria of demonstrating positive interpersonal relationships. Plaintiff was notified on March 26, 2001, that her contract would not be renewed for the 2001-2002 school year. Accordingly, the Court concludes that Defendant has articulated a legitimate nondiscriminatory reason for not renewing Plaintiffs contract for the 2001-2002 school year. See Bogren, 236 F.3d at 404 (finding that there was "sufficient evidence in the record to support [the defendant's] proffered reason" for terminating the plaintiffs employment).

k. Pretext
The third step in the McDonnell Douglas burden shifting analysis requires Plaintiff to show that Defendant's proffered reason for terminating her employment was pretextual. Pretext can be shown "either directly, by persuading the court that a discriminatory reason more likely [than not] motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence." Hase v. Missouri Div. of Employ. Sec, 972 F.2d 893, 896 (8th Cir. 1992) (citing Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).
In Plaintiffs Affidavit, she states that other employees were subject to less stringent requirements. She states that she "was required to stay late and come in early almost on a daily basis. Caucasian teachers were rarely, if ever, required to stay late ...." Plaintiff also states that she was compared to counselors in St. Charles, who were all Caucasian, and that the "criticism was directed toward the fact that the Caucasian counselors of St. Charles were more adept than I was because I am African-American." Additionally, Plaintiff avers that she "was singled out in the respect that the other Caucasian teachers were not spoken to about the work being turned in late, and I was as though it was expected that I would be late because I was the only African-American."
The existence of employees who were "involved in or accused of the same or similar conduct and are disciplined in different ways" is sufficient to show pretext. Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir.1994). However, in this case Plaintiff has failed to point to sufficient evidence in the summary judgment record to support her claims. Plaintiff has not identified by name any of the other alleged employees who were treated differently and she has not identified the circumstances of their employment through any evidence in the summary judgment record. Id. (rejecting the plaintiffs *1098 pretext argument because the plaintiff failed to set forth evidence of other employees' work histories and specific infractions thereby precluding a finding that similarly situated employees were treated differently); see also Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1108 (8th Cir.1998) (finding the plaintiffs allegations that employees were subjected to different standards conclusory and insufficient to show pretext); Davenport v. Riverview Gardens School Dist, 30 F.3d 940, 945 (8th Cir.1994) (stating that "while evidence supporting this claim of [disparate treatment] would be highly relevant to the issue of pretext, plaintiff presented no such evidence other than her own unsubstantiated allegations"). Therefore, the Court is unable to conclude that they were similarly situated. From Plaintiffs statement in her Affidavit and the documentary evidence in the summary judgment record, the Court can only conclude that Plaintiff disagreed with her negative evaluations and the job expectations imposed upon her. Erroneous performance evaluations, general disagreement with job expectations, poor supervision, and unsound business practices do not amount to discrimination, however, and Plaintiffs statements fail to demonstrate pretext. See Gray v. Arkansas Dept. of Housing & Urban Dev., 310 F.3d 1050, 1052 (8th Cir.2002).
Plaintiff also argues in her opposition to summary judgment that Principal Wildhaber's attempt to sabotage her employment search is evidence of pretext. Again, Plaintiff has not offered any evidence to support the allegation that Principal Wildhaber attempted to sabotage her employment opportunities other than Plaintiffs own self-serving statements regarding her subsequent job search. Thus, Plaintiffs argument fails.
Moreover, the undisputed facts demonstrate that Principal Wildhaber hired Plaintiff in 1999 and recommended that her contract be renewed for the 2000-2001 school year. Principal Wildhaber then recommended non-renewal of her contract in March 2001. "There is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time." Herr v. Airborne Freight Corp., 130 F.3d 359 (8th Cir.1997) (stating that "it is unlikely that the same supervisor would hire a woman, only to turn around and discharge her for that reason"); see also Miller v. Citizens Sec. Group, Inc., 116 F.3d 343, 347 (8th Cir. 1997) (stating that the fact that the same person hired the plaintiff three years before firing the plaintiff reinforces the finding that discrimination was not a motivating factor in the plaintiffs discharge). The Court concludes that there is no evidence upon which a reasonable jury could find that the proffered reason for not renewing Plaintiffs contract was simply a ruse for an intent to discriminate on the basis of race. Therefore, summary judgment in favor of Defendant on Count I is appropriate.

B. Retaliation
Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliatory discrimination under Title VII, Plaintiff must show that (1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events. Gagnon v. Sprint Corp., 284 F.3d 839, 849-50 (8th Cir.2002); Wiehoffv. GTE Directories Corp., 61 F.3d 588 (8th Cir.1995) (considering *1099 retaliation under the Age Discrimination in Employment Act) (citing Wentz v. Maryland Casualty Co., 869 F.2d 1153, 1154-55 (8th Cir.1989)). "Absent direct evidence of discrimination invoking the mixed-motive analysis of Price Waterhouse, the burden-shifting analysis of McDonnell Douglas applies to claims of retaliation." Gagnon, 284 F.3d at 849-50.
The first element of a retaliation claim requires that a plaintiff engage in "protected activity." Protected activity includes filing a formal charge with the EEOC; it also includes opposing discriminatory conduct. Wentz, 869 F.2d at 1155. Merely complaining of working conditions without attributing the complaints to an illegitimate criterion does not constitute opposition to an unlawful employment action and is not protected activity. Hunt v. Nebraska Public Power Dist, 282 F.3d 1021, 1028-29 (8th Cir.2002). To succeed, a plaintiff must show that retaliation for opposing discriminatory conduct was at the least a contributing factor to the adverse employment action. Wiehoff, 61 F.3d at 598.
Defendant argues that Plaintiff did not communicate her complaints of racial discrimination to Defendant and did not otherwise oppose racial discrimination. In opposition, Plaintiff argues that whether Plaintiff complained of racial discrimination to Mr. Balderama, the union representative, is in dispute, and summary judgment should therefore be denied.
The Court agrees with Plaintiff that the record is unclear regarding Plaintiffs complaints to Mr. Balderama. In his deposition, Mr. Balderama first denied that Plaintiff attributed any of her complaints to racial discrimination. However, Mr. Balderama also admitted that he sent Plaintiff EEOC paperwork because she "felt there was some discrimination there" and the union did not handle discrimination complaints. Viewing the facts in the light most favorable to Plaintiff at the summary stage, as the Court must, there is a dispute regarding whether Plaintiff communicated to Mr. Balderama her belief that she was being discriminated against on the basis of race.
While the Court concludes that a dispute regarding Plaintiffs communications with her union representative exists, the dispute is not material unless there is evidence that Plaintiffs complaints of racial discrimination were additionally communicated to Defendant. See Hill v. St. Louis Univ., 123 F.3d 1114, 1118 (8th Cir. 1997) (stating that a disputed fact is only material if it affects the outcome of the suit). There is no evidence that Mr. Balderama, the union representative, ever forwarded Plaintiffs concerns to management personnel at the Ritenour School District. The only complaints made to Defendant were general disagreements regarding Plaintiffs negative evaluations. On Plaintiffs December 5, 2000 Professional Improvement Plan, Plaintiff wrote:
I am signing this form under the assistance of the administrator. I am not in agreement with all of the information contained here. Statement of rebuttal to follow. I need a meeting rescheduled from the union rep, myself and the principal. I need more clarification of what is specifically needed from me. I also want to see my personnel file from the school/adm office. Thank you.
She wrote similar statements on the other evaluations she received during the 2000-2001 school year. In no instance did Plaintiff indicate that she disagreed with the negative evaluations because she thought they were discriminatory on the basis of race.
Plaintiff stated in her deposition that she faxed Personnel Director Catherine Cravens about "the concerns [she] had about harassment," and Plaintiff additionally *1100 stated in her Affidavit that she reported her complaints to Ms. Cravens. Plaintiff does not allege that she spoke to Ms. Cravens about racial discrimination and the record does not indicate that these communications with Ms. Cravens included complaints of discrimination on the basis of race. In fact, in Ms. Cravens' Affidavit, she states:
At various times during the 2000-2001 school year, Ms. Cherry contacted me, generally by facsimile, to complain about her principal Dr. Rita Wildhaber and about Dr. Wildhaber's criticism of Ms. Cherry's performance. At no time during any of these numerous communications did Ms. Cherry state that Dr. Wildhaber was discriminating against her because of her race or even mention discrimination.
Thus, the only evidence in the summary judgment record indicates that Plaintiff made general complaints to Ms. Cravens; there is no evidence showing that the complaints communicated to Ms. Cravens included complaints of racial discrimination.
Even if Plaintiffs averments can be construed as sufficient evidence of complaints involving race, there is no evidence that Principal Wildhaber, the decisionmaker, was ever notified of the complaints. See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir.1996) (affirming summary judgment for the employer where there was "no evidence that the supervisors who perpetrated the alleged indignities on [the plaintiff] mentioned, or were even aware of, her EEOC claim"). The Court notes that in Plaintiffs Verified Complaint, Plaintiff makes reference to a "dispute resolution"; however, no evidence or mention of a dispute resolution exists in the summary judgment briefs or record. There is no evidence demonstrating that race discrimination was discussed during a dispute resolution with Principal Wildhaber. Therefore, Plaintiff has failed to show that she engaged in protected activity, and summary judgment shall be granted on her unlawful retaliation claim.

IV. CONCLUSION
The Court concludes that Plaintiff has failed to set forth evidence of a prima facie case of race discrimination. Plaintiff has not set forth evidence showing that she was meeting legitimate expectations of her employer or evidence allowing an inference of discrimination. Even if Plaintiff had created genuine issues of material fact supporting her prima facie case, she has failed to show that Defendant's non-discriminatory reason for not renewing her contract was pretextual.[13] Defendant is accordingly entitled to judgment as a matter of law. On Plaintiffs claim of retaliation in violation of Title VII, the Court concludes that Plaintiff did not engage in protected activity. Therefore, Defendant is entitled to summary judgment.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [doc. # 32] is GRANTED.
An appropriate order of judgment will accompany this Order.

JUDGMENT
In accordance with the Memorandum and Order entered on this date and incorporated herein,
NOTES
[1] The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts and Plaintiff's Objections and Responses to Defendant's Statement of Uncontroverted Facts. The Court has noted any disputes as they are set forth in the briefs.
[2] Plaintiff objects to this fact "in so far as [it is] used to insinuate that Dr. Wildhaber had no intent to discriminate based upon race." The Court finds this objection to be insufficient to put into dispute the fact that Principal Wildhaber hired Plaintiff in 1999.
[3] Plaintiff also objects to this fact "in so far as [it is] used to insinuate that Dr. Wildhaber had no intent to discriminate based upon race." The Court finds this objection insufficient to create a genuine dispute of material fact for summary judgment purposes, as it is merely a conclusion of law not a dispute of fact.
[4] Plaintiff objects to this fact to the extent it insinuates that Plaintiff was behind on completing student referrals. There is no evidence in the record demonstrating whether or not Plaintiff was in fact behind on completing students' special education referrals.
[5] Although not set forth by the parties in the Statement of Uncontroverted Facts or Objections thereto, the Court notes that Plaintiff stated her disagreement with its contents and signed the form on December 21, 2000.
[6] Plaintiff states that any facts regarding criticism of Plaintiff's work are opposed "in so far as they are used to insinuate that criticisms of Dr. Wildhaber were rational, reasonable, and effectively communicated so as to constitute legitimate reasons for non-renewal of employment contract."
[7] There is no allegation in the Complaint regarding gender discrimination.
[8] Plaintiff objects in so far as this statement "insinuates that the Ritenour School District in fact did not previously nor does it currently discriminate on the basis of race, gender, age, or disability." The Court believes Plaintiff's objection is a legal conclusion as opposed to a factual dispute.
[9] Plaintiff states that these facts are in dispute to the extent that they are considered to be the basis for Plaintiff's non-renewal of contract, or that her primary reason for taking off work was other than to care for her child. The Court notes that this incident occurred after the school board voted to not renew Plaintiff's contract.
[10] There appears to be no dispute that Plaintiff timely filed a charge of discrimination with the EEOC and the Missouri Commission on Human Rights and received a Right to Sue Notice prior to filing this action.
[11] Plaintiff's Complaint is verified; therefore, for the purposes of summary judgment, it is the equivalent of an affidavit. See Roberson v. Hayti Police Depart., 241 F.3d 992, 994-95 (8th Cir.2001).
[12] If a plaintiff sets forth direct evidence of discrimination, the mixed-motive framework set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), applies. Under the Price Waterhouse framework, once the plaintiff establishes direct evidence that an illegitimate criterion was a motivating part of the employment decision, the burden shifts and the employer must show that the same decision would have been made absent the illegitimate criterion. See Gagnon v. Sprint Corp., 284 F.3d 839, 847 (8th Cir.2002) (comparing the Price Waterhouse framework with the McDonnell Douglas framework); see also Stacks v. Southwestern Bell Yellow Pages, Inc., 996 F.2d 200, 202 (8th Cir. 1993). In this case, there is no evidence of direct discrimination; therefore, the Price Waterhouse direct evidence analysis is not applicable.
[13] Plaintiffs Complaint makes general allegations regarding a failure to promote; however, no evidence of an available promotion has been set forth in the record and no arguments regarding a failure to promote claim were made in the summary judgment briefs. The Court therefore concludes that any claim of racial discrimination due to a failure to promote is also appropriately dismissed on summary judgment. See Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998) (setting forth the elements of a failure to promote claim).