# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2975

_____

| | | |
|---|---|---|
| Franklin Woods, | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Stephen A. Perry, Administrator, | * | District of South Dakota. |
| United States General Services | * | |
| Administration, | * | |
| | * | |
| Defendant – Appellee. | * | |

_____

Submitted: May 12, 2004
Filed: July 12, 2004

_____

Before WOLLMAN, HEANEY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Franklin Woods brought this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17, alleging that the General Services Administration (GSA) had discriminated on the basis of gender in selecting Sandra Baumgartner as Dakotas Fleet Management Center manager despite his superior qualifications. The district court[1] granted summary judgment to GSA, and Woods appeals. We affirm.

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

Woods joined GSA in 1992 as assistant manager of the Pierre, South Dakota Fleet Management SubCenter. He had an Associate Degree in mechanical technology from the University of South Dakota at Springfield and a Bachelor Degree in business administration from Northern State College. In December 1994 he was designated acting manager of the SubCenter, and he was promoted to manager in September 1995. In 1997, the Pierre office was closed and relocated to Rapid City, South Dakota where Woods continued as manager, a GS-12 position.

Baumgartner started to work at GSA in 1977 as a student aide while completing an Associate Degree in business and legal secretarial at Bismarck Junior College. Baumgartner was soon promoted to transportation operations specialist and then to assistant manager of the North Dakota Fleet Management Center (FMC). The manager of that FMC had a substance abuse problem, and Baumgartner frequently served as de facto manager during her fourteen years as assistant manager, particularly after the manager was suspended in 1995. In September 1999 Baumgartner competed for and was promoted to manager of the North Dakota FMC, a GS-12 position.

In August 1999, GSA announced that it needed to reduce the number of FMCs over the next three years. Among the reorganization proposals under consideration was one to combine the North and South Dakota offices under one manager. After lengthy discussion, the final consolidation plan was circulated in August 2000 and approved by the union on November 28, 2000. Eddie Ward, a personnel staffing specialist, prepared a vacancy announcement for manager of the Dakotas FMC, a GS-13 position. The announcement was posted November 29, 2000, along with other vacancies resulting from the reorganization. The position required one year of specialized experience at the GS-12 grade level which equipped the applicant with the particular knowledge, skills, and abilities (KSAs) to perform the necessary duties. The announcement specified the seven most relevant KSAs: (1) knowledge of fleet operations; (2) knowledge of vehicles, agency operations and requirements,

procurement regulations, and contracts; (3) ability to analyze costs and market trends; (4) planning and organizing; (5) oral communication; (6) written communication; and (7) leadership.

Only Woods and Baumgartner applied for the position. They were judged equally qualified by the Human Resources Office in Fort Worth, Texas and referred to the Regional Fleet Manager for the Rocky Mountain Region, Cynthia J. Hanson. Hanson was responsible for selecting the Dakotas manager from the two candidates, and her initial evaluations ranked Woods higher in written communication and Baumgartner higher in both knowledge of fleet operations and leadership. Hanson conducted individual telephone interviews of the candidates on December 21, 2000. She asked them the same five questions and made notes of their responses and her reactions. Hanson's notes expressed concern that Woods felt his greatest strength was his leadership ability even though "prior complaints from employees indicate otherwise" and that she did not believe he was a strong leader. Woods' response to her question whether he wanted to add any information to his file was to ask why the decision was taking so long, why Baumgartner had been promoted to manager of the North Dakota FMC, and why the Dakotas FMC decision was not "clear cut." Woods acknowledged his interview was "decent up until the final question. At that point it dropped off considerably." Hanson's notes indicate that she could "not understand why Frank feels so superior to [the] other candidate. He should have focused on his abilities rather than questioning [the] other applicant."

After concluding the interviews, Hanson concluded that Baumgartner would be the better person for the job because a strong leader was needed to consolidate personnel and resources at the new Dakotas FMC. Hanson knew that Baumgartner was respected by her employees and had a proven ability to lead. She discussed the selection of Baumgartner with her supervisor Kenneth Bowen, and he agreed with the decision to hire her. Bowen felt that Woods did not have the people skills necessary for the position and that his harsh management style had an adverse effect on his associates. Hanson also conferred with three managers in the region as to their

opinions of the candidates, and they recommended that she hire Baumgartner. Hanson offered the job to Baumgartner, who has served in the position since January 14, 2001. Woods then sued the GSA Administrator under Title VII.

The district court decided that Woods had met the basic elements of a prima facie Title VII case, but that he had not shown the additional requirement in a reverse discrimination case "that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." Duffy v. Wolle, 123 F.3d 1026, 1036 (8th Cir. 1997). Even if Woods could show the requisite background circumstances along with a prima facie case of discrimination under the first step in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), the district court said his case would fail as a matter of law because he had presented no evidence of pretext. It granted summary judgment to GSA.

We review de novo a grant of summary judgment. Anderson v. Franklin County, 192 F.3d 1125, 1131 (8th Cir. 1999). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law when the evidence is viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). We review Woods' claims under the burden shifting framework of McDonnell Douglas, 411 U.S. at 802-03, and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

Woods bore the initial burden to establish a prima facie case and then GSA had to articulate a legitimate nondiscriminatory reason for its action. For his prima facie case Woods had to show that (1) he belongs to a protected class; (2) he applied and was qualified for a job; (3) he was rejected despite his qualifications; and (4) his employer promoted a woman. See Burdine, 450 U.S. at 254; McDonnell Douglas, 411 U.S. at 802. In reverse discrimination cases, the plaintiff has also been expected to show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." See Duffy, 123 F.3d

at 1036. Accord Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001); Mills v. Health Care Serv. Corp., 171 F.3d 450, 457 (7th Cir. 1999); Notari v. Denver Water Dep't, 971 F.2d 585, 589 (10th Cir. 1992); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985).[2] Woods could show suspicious background circumstances by showing evidence that GSA is inclined to discriminate invidiously against males or something "fishy" about the facts that raises an inference of discrimination. See Harding v. Gray, 9 F.3d 150, 153 (D.C. Cir. 1993).

To survive summary judgment Woods had to produce evidence that would allow a jury to find that GSA's proffered reason for choosing Baumgartner because of her superior leadership ability is pretext and that the real reason for its action was discriminatory. See Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)). While Woods notes that summary judgment should be used sparingly in employment discrimination cases, citing Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994), it is appropriate where there are no disputed facts and only one conclusion is possible. Id. The ultimate burden of persuasion remains at all times with Woods. See Burdine, 450 U.S. at 253.

Woods argues that the district court erred in finding that the record did not support his claim that GSA was the unusual employer that discriminates against men. In support he cites the noncompetitive promotion of a female manager in Montana, the promotion of a female to assistant manager in Denver before a male could qualify, the request for an exception to retain a female, and the promotion of Baumgartner to

---

[2]On appeal Woods raises a new issue, asking us to adopt the Third Circuit approach requiring a reverse discrimination plaintiff to "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999). Woods waived this issue by not raising it below, see United States v. Alvarez-Sanchez, 511 U.S. 350, 360 n.5 (1994), but that standard would not change the result here.

manager of the North Dakota FMC. He contends that "since Cynthia Hanson became Regional Fleet Manager, the region had become 'a girls' club.'" He alleges the district court erred by not finding suspicious background circumstances because his qualifications were superior to Baumgartner's and by finding GSA's proffered reason not pretextual.

Woods suggests that a good example of GSA's favoritism toward women was the promotion of Sherrie Hernandez in the Billings FMC through accretion (internal advancement without competition) without his being accreted at the same time. The record shows that Hernandez was hired in 1997 by Hanson's predecessor, Irv Merwin, and advanced to GS-13 in January 1999 because her fleet included more than 2000 vehicles. The region had two other GS-13 managers; both were men who had been classified at that level because of fleet size. When Hernandez was accreted, Hanson also promoted two male managers and increased their GS levels. Hanson's decisions were approved by the Human Resources Office, and the record indicates that Woods was in charge of fewer vehicles than Hernandez and not similarly situated. See Williams v. Ford Motor Co., 14 F.3d 1305, 1309 n.2 (8th Cir. 1994).

Woods alleges that Hanson rushed the promotion of a woman to assistant manager of the Denver FMC to preclude a man from applying. GSA responds that there was no eligible male candidate and that the male manager of the Denver FMC had agreed with Hanson's promotion decision. Woods has produced no evidence that any male applicant was discouraged from qualifying or applying. Woods complains that Hanson requested permission to recruit internally for a transportation operations specialist in order to keep a female contract employee from resigning, but he offers no evidence to show that Hanson used this method of recruitment to favor women over men. GSA presented evidence that men were promoted at the same rate as women and that the Rocky Mountain Region workforce had more men than women. The Work Force Profile showed that after Hanson became Regional Fleet Manager, 14 women and 16 men were promoted. Against this background, the handful of

promotions of women that Woods points to is insufficient to meet his burden to show that GSA discriminates against men.

Woods alleges that an inference of discrimination can also be drawn from the promotion of Baumgartner to manager of the North Dakota FMC. He contends that Hanson requested an exception to the hiring freeze in 1999 to open the position for Baumgartner. It is undisputed, however, that the position was announced for competition and that the hiring freeze only meant that personnel actions were restricted to GSA employees. Similar promotions were allowed after Hanson requested an exception to the hiring freeze for the Salt Lake City FMC in March 2000, which benefitted male employees. The internal promotion of Baumgartner does not establish suspicious background circumstances of discrimination against men when male employees also benefitted from advancement during the hiring freeze.

Woods also contends that it was unnecessary to fill the North Dakota managerial position because that position would have been eliminated in any consolidation with the South Dakota FMC where he was manager. It is undisputed, however, that the August 1999 proposal to consolidate the North and South Dakota FMCs went through several drafts, was not approved until November 2000, and the manager of the Dakotas FMC was not selected until January 2001. At the time Baumgartner was promoted to manager of the North Dakota FMC, Hanson did not know if or when the centers would be consolidated. Woods argues that the manager of the Dakotas FMC could have been chosen in August 2000 when GSA approved the consolidation plan, rather than waiting until November 2000 for union approval. At that time Baumgartner would have been ineligible, because she would not have been at level GS-12 for the requisite year. The president of Local 3275 of the American Federation of Government Employees (AFGE) union, Steven Hahn, indicated that AFGE's approval was necessary before the reorganization could be implemented. Woods produced insufficient evidence for a jury to find that GSA waited to post vacancy announcements as a means of discriminating against men.

In his final argument to establish suspicious background circumstances, Woods alleges that he was better qualified for the Dakotas FMC position and that this is sufficient by itself in a reverse discrimination case to establish a prima facie claim, citing Harding, 9 F.3d at 153. Woods notes that he has a four year degree while Baumgartner has only a two year degree. Baumgartner had 23 years of experience with GSA, however, while Woods had only eight. Woods also contends that he had more formal management experience (five years versus 15 months), but Baumgartner often served as de facto manager during her 14 years as assistant manager. It is inevitable that two candidates will have different education and work experience, and the choice of a qualified candidate with 15 more years of GSA work experience and a superior leadership rating over one with two extra years of formal education is not sufficient to show background circumstances. See Duffy, 123 F.3d at 1038.

Woods claims that a requirement of knowledge of vehicle maintenance and repair was intentionally left out of the vacancy announcement and that had it been included, he would have been the objectively superior candidate. He produced no evidence to suggest that the omission of this KSA was anything more than an oversight by the Human Resources Office in Texas. He has not shown that Hanson was aware the KSA was missing, and Woods did not call it to anyone's attention until after he initiated this lawsuit. Despite its omission, Woods' application discussed his knowledge of vehicle maintenance and his two year degree in mechanical technology. Moreover, the record reveals that the two candidates were at least similarly qualified in this area because Baumgartner had eighteen years of experience working part time in her husband's automotive repair business. A comparison that reveals that the plaintiff's qualifications were similar to those of the selected candidate does not raise an inference of gender discrimination. See Chock v. Northwest Airlines, Inc., 113 F.3d 861, 864 (8th Cir. 1997) (affirming summary judgment for employer).

The district court also concluded that even if Woods could show GSA is the unusual employer who discriminates against men, he had not produced evidence to show that its stated reason for its decision — that Baumgartner had superior

leadership ability — was pretextual.  We agree that Woods failed to present evidence sufficient to show that GSA's justification for its actions was pretextual.  See Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1017 (8th Cir. 1999).  Since the new manager of the Dakotas FMC had the task of consolidating two offices, the key skill Hanson sought was leadership, a manager who could unite the offices and "lead them into the future."  Hanson's review praised Baumgartner's personable style and demonstrated ability to deal with people and problems in an excellent manner.  She also noted that Baumgartner "has shown great leadership ability for many years."  She interviewed better than Woods, received letters of commendation and service awards, and had received no complaints regarding how she managed her staff.

While Woods also received praise, there were numerous indications in the record that his staff disliked him and the working environment.  He had heavy turnover during his tenure as manager, and one employee complained that Woods had kicked his chair when he was disciplining him.  Woods himself acknowledges difficulties with his staff, particularly during the "tumultuous period of 1997" when the Pierre and Rapid City SubCenters were consolidated.  Woods has offered no evidence that his leadership abilities were better than Baumgartner's, and leadership ability is a legitimate, nondiscriminatory hiring consideration.  See Floyd v. Missouri Dep't of Soc. Servs., 188 F.3d 932, 937 (8th Cir. 1999).  Because Woods was unable to show that Baumgartner was not a superior leader and that her promotion was the result of gender discrimination, Kneibert v. Thomson Newspapers, Michigan Inc., 129 F.3d 444, 454 (8th Cir. 1997), there is no question of material fact to submit to a jury.

Accordingly, we affirm the judgment of the district court.

_____