**Janie WALLETTE, Plaintiff,**

v.

**Tommy G. THOMPSON, Secretary of Department of Health and Human Services, and the United States of America, Defendants.**

**No. A4–04–68.**

United States District Court,
D. North Dakota,
Northwestern Division.

June 21, 2005.

Donald G. Bruce, Belcourt, ND, for Plaintiff.

David L. Peterson, U.S. Attorney's Office, Bismarck, ND, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion for Summary Judgment and Motion to Dismiss filed on April 27, 2005. The Plaintiff filed a response, on May 31, 2005, opposing the motions. For the reasons set forth below, the Defendants' motion is granted.

## I. BACKGROUND

The plaintiff, Janie Wallette, is a 53–year–old female who has been employed at the Quentin Burdick Comprehensive Health Care Facility in Belcourt, North Dakota, for over 20 years. The Quentin Burdick Comprehensive Health Care Facility is a facility of the Indian Health Service ("IHS"). The Indian Health Service is a component of the United States Department of Health and Human Services, an agency of the United States.

At the time of the alleged discrimination, Wallette was employed as a custodial worker, Grade 2. On August 3, 2001, IHS posted a vacancy announcement for a "tractor operator BE2222." The vacancy announcement included the following description of the duties and responsibilities of the position:

> The position is located in the maintenance department. The purpose of this position is to provide maintenance service and care of the hospital grounds. The incumbent follows manufacturers instructions on product labels regarding the depth and spacing of seeds, application of chemicals and fertilizers, etc. Make repairs to equipment within the scope of capabilities or notifies supervisor when it is beyond his capabilities. Maintains and protects at all times all government issued tools and equipment assigned. Works under the general supervision of the Maintenance Department Leaders who issue instructions and reviews work though observation of results. Makes repairs to equipment within the scope of capabilities or notifies supervisor when it is beyond his capabilities. Practices good housekeeping at all times in assigned work and shop areas. Incumbent is required to operate a government owned or leased vehicle in performance of duties.

(Docket No. 20, Exhibit 13). On August 13, 2001, Wallette applied for the tractor operator position. On October 4, 2001, Oliver Darrell Parisien was selected for the tractor operator position. (Docket No. 20, Exhibit 14).[1]

On October 16, 2001, Wallette made her initial contact with an EEO counselor. (Docket No. 20, Exhibit 3). Wallette alleged "sex discrimination in hiring" and gave the following narrative of the alleged discrimination.

> Aggrieved individual stated that on 10/15/2001 she discussed with [Eugene]

---

1. On December 22, 2003, IHS posted a job vacancy for a motor vehicle operator at a grade of WG–5. Wallette applied for this position and was selected. She started work as a motor vehicle operator effective March 7, 2004.

Belgarde, a supervisor in the maintenance department, that she felt that "being a women applying for a job in maintenance knocked (her) chances out of being hired in the maintenance department." The aggrieved stated that [Eugene's] response to her statement was that he had told Gary Howe, head of maintenance, that eventually he would have to hire a woman. The aggrieved individual stated that [Euguene] Belgarde, the individual making the selection for the position in maintenance, had told her, "You know, it's kind of a dirty job. You get oil on your hands and have to get dirty." (Docket No. 20, Exhibit 3). Wallette was notified of her right to file on October 31, 2001, and her final interview with an EEO counselor was on November 13, 2001. (Docket No. 20, Exhibits 2 & 3).

On November 21, 2001, a formal complaint was filed with IHS. (Docket No. 20, Exhibit 1). On February 6, 2002, the complaint was accepted. (Docket No. 20, Exhibit 4). Wallette asserted she was discriminated against on the basis of sex (female), when on September 25, 2001, she was not selected for the position of tractor operator, BE2222, WG–5705–05, under vacancy number 01–009–BE. (Docket No. 20, Exhibit 4).

The EEO investigated Wallette's assertions and obtained affidavits from the individuals involved in the hiring process. Wallette stated that she believed sex was a motivating factor in her non-selection because (1) the job announcement referred to the male gender in describing the job duties and responsibilities, (2) the maintenance department had never hired a female, and (3) the selecting official made a remark about eventually having to hire a female. (Docket No. 20, Exhibit 6).

Eugene Belgarde was the maintenance foreman at IHS and made the selection for the position of tractor operator. (Docket No. 20, Exhibit 8). Belgarde stated the male selected for the tractor operator position was better qualified than Wallette.

The person I selected was by far the most qualified tractor operator of the bunch and was more qualified than Ms. Wallette. My decision to choose the person I selected was based upon his experience at operating all kinds of different implements, including tractors, mowers, loaders, balers, cultivators, to name a few. The selectee also had performed maintenance on that equipment and his application indicated that he had a good understanding of how to operate the machinery safely. Operator safety was one of my major concerns in making my selection. My feeling is that the more different kinds of equipment that you operate and the greater number of hours that you spend operating and maintaining that equipment, the greater your familiarity will be with how that equipment operates and the less likely you will be to get injured on the job.

(Docket No. 20, Exhibit, 9). Belgarde also stated what he remembered telling Wallette was different than her recollection of his statement. Belgarde stated he told Wallette: "I am surprised that more women do not apply for maintenance positions when they come out as I am sure there are some very qualified women out there, that should apply." (Docket No. 20, Exhibit 8). Belgarde stated his comment was meant to provide encouragement to Wallette. (Docket No. 20, Exhibit 9). Belgarde denied ever saying "eventually we will have to hire a woman." (Docket No. 20, Exhibit 9).

Donna Belgarde, a human resource assistant at IHS, prepared the job vacancy announcement. (Docket No. 20, Exhibit 10). Donna Belgarde acknowledged that the job vacancy twice used male pronouns in the job duties and responsibilities sec-

tion. (Docket No. 20, Exhibit 10). Donna Belgarde stated she usually does not used gender-biased words in vacancy announcements and that any such use in this vacancy announcement was an oversight. (Docket No. 20, Exhibit 10). Donna Belgarde stated that eleven males and one female applied for the tractor operator position. (Docket No. 20, Exhibit 10). Donna Belgarde also prepared the selection certificate, which included Wallette and two other applicants who were both male. (Docket No. 20, Exhibit 10).

Gary Howe is the facility manager at the IHS facility in Belcourt. (Docket No. 20, Exhibit 12). He is Eugene Belgarde's immediate supervisor. (Docket No. 20, Exhibit 12). Howe was the concurring official for the position of tractor operator. (Docket No. 20, Exhibit 12). Howe stated his reasons for concurring with Belgarde's recommendation was based on Belgarde's opinion that the selectee "was more qualified and had more experience with grounds equipment." (Docket No. 20, Exhibit 12).

Wallette, in her rebuttal affidavit, stated that she believed the selectee's farm background did not make him more qualified, because she also grew up on a farm. (Docket No. 20, Exhibit 7). Wallette reaffirmed her recollection of the statement made by Belgarde that they would have to eventually hire a woman. (Docket No. 20, Exhibit, 7).

After the investigation, Wallette requested and received a hearing before an Administrative Law Judge. On March 11, 2004, the ALJ issued an order in favor of IHS. The ALJ found that Wallette had established a prima facie case of sex discrimination. However, the ALJ also found that Wallette had not established that she was superior to the person selected for the position. Thus, the ALJ concluded that Wallette had not established that IHS's legitimate non-discriminatory reasons for not selecting her were a pretext for sex discrimination. Wallette filed her complaint in the matter presently before the Court on May 21, 2004.

## II. MOTION TO DISMISS

The Defendants seek a dismissal pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. The Defendants assert that the Court lacks subject matter jurisdiction over the Title VII and tort causes of action alleged in the complaint. The Defendants also allege that Wallette has failed to exhaust her administrative remedies.

### A. STANDARD OF REVIEW

It is well-established that "a district court 'has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1).'" Harris v. P.A.M. Transport, Inc., 339 F.3d 635, 637 n. 4 (8th Cir.2003) (quoting Osborn v. United States, 918 F.2d 724, 728 n. 4 (8th Cir.1990)) (citing Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). Unlike a motion to dismiss under 12(b)(6), to look at matters outside the pleadings does not convert a Rule 12(b)(1) motion to a motion for summary judgment. Id. The Eighth Circuit has explained that the difference between the two rules "is rooted in the unique nature of the jurisdictional question." Osborn, 918 F.2d 724, 729 (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.1981)). "[A] district court has 'broader power to decide its own right to hear the case than it has when the merits of the case are reached.'" Id. Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide. Id.

"Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is sub-

stantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d 724, 730. As a result, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of undisputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Id.* "Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

## B. LEGAL DISCUSSION

In her complaint, Wallette appears to allege tort claims arising under 28 U.S.C. §§ 2671–2680 (Federal Tort Claims Act). The Defendants contend that Title VII of the Civil Rights Act preempts other avenues of recovery for claims of discrimination in federal employment. *See Brown v. GSA*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In addition, the Defendants assert that any tort claims that may remain should be dismissed for failure to exhaust administrative remedies. In her response, Wallette does not oppose the Defendants' attempt to have any reference to a tort claim dismissed. Therefore, the Court grants the Defendants' Motion to Dismiss and dismisses any alleged tort claim(s) set forth in Wallette's complaint based on the Federal Tort Claims Act.

## III. SUMMARY JUDGMENT MOTION

In their Motion for Summary Judgment, the Defendants assert that Wallette's Title VII claim of gender-based discrimination should be dismissed because Wallette has failed to show that the proffered explanation for her non-selection was pretextual. Wallette contends that the Defendants have failed to establish a legitimate, non discriminatory reason for her non-selection.

## A. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. LEGAL DISCUSSION

In order to establish a prima facie case of sex discrimination, a plaintiff must show that she "(1) is member of a protected class; (2) was qualified to perform her job;

(3) suffered an adverse employment action; and (4) was treated differently than similarly-situated persons of the opposite sex." *Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir.2000).

If the plaintiff establishes a prima facie case of intentional gender discrimination, the burden then shifts to the defendant to articulate some legitimate non-discriminatory reason for the selection decision. *Ottman v. City of Independence, Missouri*, 341 F.3d 751, 757 (8th Cir.2003).

> This presumption places an obligation upon the employer to produce evidence of a legitimate, nondiscriminatory reason for the [employment decision]. If the employer carries this burden, the legal presumption of unlawful discrimination "drops out of the picture."

*Stuart v. General Motors Corp.*, 217 F.3d 621, 634 (8th Cir.2000).

 If the defendant satisfies this burden, then the plaintiff must show that the proffered reason is a pretext for intentional discrimination. *Id.*

> [A plaintiff] may still prevail if [she] can proffer evidence of pretext and disbelief of the defendant's explanation. Merely disputing [the defendant's] reason is insufficient, however. [A plaintiff] "must show 'both that the reason was false, and that discrimination was the real reason.'"

*Stuart v. General Motors Corp.*, 217 F.3d 621, 634 (8th Cir.2000). "An employee's attempt to prove pretext for actual discrimination requires more substantial evidence than it takes to make a prima facie case, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 834 (8th Cir.2002). To overcome the proffered reasons and avoid summary judgment, a plaintiff must present evidence that (1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that gender was a determinative factor in the adverse employment decision. *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 921 (8th Cir. 2000). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Ottman v. City of Independence, Missouri*, 341 F.3d 751, 757 (8th Cir.2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Neither party disputes that Wallette has set forth a prima facie case of sex discrimination.[2] Accordingly, the burden shifts to the Defendants to set forth a legitimate, non-discriminatory reason for Wallette's non-selection.

 The Defendants contend that the selection was made on qualifications alone. The Defendants point to Belgarde's opinion that the selectee was the most qualified among the eligible candidates. Belgarde stated his selection was based upon the selectee's experience at operating many different kinds of implements including tractors, movers, loaders, balers, and cultivators. Belgarde also said that he based his decision partly on a concern for operator safety and his belief that the selectee's greater experience with different kinds of

---

**2.** In its brief, the Defendants sets forth a heading asserting that Wallette must establish a prima facie case of sex discrimination, but in the subsequent discussion, aside from a recitation of the elements of a sex discrimination claim, the Defendants fail to assert whether Wallette has established a prima facie case of discrimination. The Court views the Defendants failure to contest this issue as an admission that Wallette has set forth a prima facie case of sex discrimination.

equipment would lead to a safer work environment for the employee. The Defendants also contend that a comparison of the applications of Wallette and the selectee clearly supports Belgarde's statement that the person he selected for the tractor operator position was more qualified than Wallette. (Docket No. 20, Exhibits 15 & 16). Finally, as to the statement Wallette attributes to Eugene Belgarde, the Defendants assert that Belgarde never made such a statement.

The Defendants also argue that any gender-biased wording in the job vacancy announcement was an oversight. The Defendants note that with the exception of the "Duties and Responsibilities" section of the vacancy announcement, the remainder of the vacancy announcement is written in gender-neutral fashion. (Docket No. 20, Exhibit 13). The vacancy announcement uses both the male and female pronouns "he" or "she" and "he/she" in two different places in the vacancy announcement. (Docket No. 20, Exhibit 13)

After carefully reviewing the applications of Wallette and the selectee, and the affidavits of the individuals involved in the hiring process, the Court finds that the reasons proffered by the Defendants (that the selectee was the most qualified applicant and that the use of male pronouns in the job vacancy announcement was an oversight), are legitimate, non-discriminatory reasons for the non-selection of Wallette and are sufficient to rebut the presumption of discrimination.

■ The burden then shifts to Wallette to show that the proffered reasons are a pretext for intentional discrimination. Wallette relies primarily on her recollection of a conversation with Eugene Belgarde, in which Wallette contends Belgarde made the statement that "eventually we will have to hire a woman" to show that the hiring decision was based on gender and not on the applicants' qualifications.

Wallette also points to the language in the job vacancy announcement in an attempt to show that IHS set out to hire a male tractor operator. To prevail at this stage Wallette must present evidence that (1) creates a question of material fact as to whether the Defendants' proffered reasons are pretextual and (2) creates a reasonable inference that gender was a determinative factor in the adverse employment decision. *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 921 (8th Cir.2000).

As to the use of the pronoun "his" in the job vacancy announcement, Wallette has offered no evidence to question the Defendants' proffered explanation that the wording was an oversight. Nor does Wallette address the use of gender-neutral pronouns in the remainder of the vacancy announcement. The Court finds that whatever discriminatory motive the use of male pronouns could arguably infer, the use of gender-neutral pronouns throughout the remainder of the job vacancy announcement negates it. Thus, the Court expressly finds that Wallette has failed to establish a question of material fact as to the Defendants' proffered reason that the use of male pronouns in a portion of the job vacancy announcement was an oversight rather than a discriminatory act.

As to the proffered reason that the most qualified applicant was hired, Wallette contends that the selectee was not more qualified and that she was the more qualified applicant. Wallette does not specifically set forth the basis for her conclusion that she was the more qualified applicant. Rather, Wallette merely asserts that she was more qualified. Such bald assertions are insufficient to establish a question of material fact. Even if the Court were conclude that Wallette's qualifications were equal to the selectee's qualifications, this is still insufficient to establish the inference of discrimination. *See Woods v.*

*Perry,* 375 F.3d 671 (8th Cir.2004)("A comparison that reveals that the plaintiff's qualifications were similar to those of the selected candidate does not raise an inference of gender discrimination."); *Lidge–Myrtil v. Deere & Co.,* 49 F.3d 1308 (8th Cir.1995).

Wallette also argues that the comments made by Eugene Belgarde show that IHS had "a mind set to hire a male regardless of the qualifications of any female applicant." While the record shows there is a factual dispute as to what Eugene Belgarde actually said, even if the Court were to resolve the factual dispute in Wallette's favor and accept her recollection that Belgarde said "eventually we will have to hire a woman," Wallette would still need to establish that gender was a determinative factor in the adverse employment decision.

The Eighth Circuit has held that a plaintiff must establish a connection between the alleged discriminatory statement and the employment decision. *See Simmons v. Oce–USA, Inc.,* 174 F.3d 913, 915 (8th Cir.1999)("Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference. Stray remarks made in the workplace are not sufficient to establish a claim of discrimination."). Even if Eugene Belgarde's comments could be construed as showing he had a discriminatory attitude or views against women working in the maintenance department, Wallette would have to establish that this discriminatory animus was directed against the plaintiff personally and led to the adverse employment action. *See Hammer v. Ashcroft,* 383 F.3d 722, 727 (8th Cir.2004). Wallette has not offered any evidence to establish that Belgarde's comments were connected to the employment decision not to select her for the tractor operator position.

The Court expressly finds that Wallette has failed to present any evidence that creates a question of material fact as to whether the Defendants' proffered reasons are pretextual. The Court also finds that Wallette has failed to set forth evidence that creates a reasonable inference that gender was a determinative factor in the adverse employment decision. Thus, the Court expressly finds that there are no genuine issues of material fact that preclude the entry of summary judgment in favor of the Defendants.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' Motion to Dismiss and Motion for Summary Judgment (Docket Nos. 19–1 & 19–2).

**IT IS SO ORDERED.**