SMITH, Circuit Judge,
with whom MURPHY, BYE, MELLOY and SHEPHERD, Circuit Judges, join, concurring in part and dissenting in part.
I concur in the court’s holdings that (1) “[tjhere is no ‘discrimination case exception’ to the application of summary judgment,” supra Part II.A., and (2) Torgerson’s § 1981 claim fails, supra Part III. I respectfully dissent from the court’s conclusion that no genuine issues of material fact exist as to whether the City discriminated against Torgerson based on his national origin and Mundell based on her sex. These claims, to be sure, are not certain winners with overwhelming supporting evidence, but they need not be to merit trial by jury.
Our circuit has maintained cautionary language for handling discrimination cases for a generation. This language probably should not have survived the mid-eighties as there is no “discrimination case exception” to the summary judgment standard for employment discrimination cases, see supra Part II.A. It is fitting that the language of our cases match the law. That said, we should never forget that,
[a]t the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter. [Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)]. Rather, the court’s function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence. Id. at 248, 106 S.Ct. at 2510. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [Torgerson and Mundell’s] favor. Id. at 255, 106 S.Ct. at 2513. “If reasonable minds could differ as to the import of the evidence,” summary judgment is inappropriate. Id. at 250, 106 S.Ct. at 2511.
Quick v. Donaldson Co., 90 F.3d 1372, 1376-77 (8th Cir.1996) (emphasis added).
And, we should remain mindful that “[t]he shifting burdens of proof set forth in McDonnell Douglas are designed to assure that the ‘plaintiff [has] his day in court despite the unavailability of direct evidence.’ ” Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir.1979)). “The framework set forth in McDonnell Douglas ... was ‘never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.’ ” Weldon v. Kraft, 896 F.2d 793, 798 (3d Cir.1990) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 *1055 L.Ed.2d 957 (1978)). Our sister circuits have “highlighted” the “point” that “ ‘[t]he strength of the prima facie case and the significance of the disbelieved pretext will vary from case to case depending on the circumstances. In short, everything depends on the individual facts.’ ” Thomas v. Eastman Kodak Co., 183 F.3d 38, 57 (1st Cir.1999) (quoting Woods v. Friction Materials, Inc., 30 F.3d 255, 260 n. 3 (1st Cir.1994)).
“The sufficiency of the finding of pretext to support a finding of discrimination depends on the circumstances of the case.” Fisher v. Vassar College, 114 F.3d 1332, 1338 (2d Cir.1997). Moreover, “it is difficult, if not impossible, to say in any concise or generic way under what precise circumstances ... an inference [of discrimination from a showing of pretext] will be inappropriate.” Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 (D.C.Cir.1998). Because discrimination, and discrimination cases, come in many different forms, a case-by-case analysis is always necessary.
Id. at 57-58. A court should not become so “overly enthralled with the McDonnell Douglas proof scheme” as to “lose sight of the [proverbial] forest for the trees.” Blankenship v. Warren Cnty. Sheriff’s Dep’t, 939 F.Supp. 451, 460 (W.D.Va.1996).
“[T]he third stage of the McDonnell Douglas framework — the pretext stage— [is perhaps] the most critical.” The Honorable Timothy M. Tymkovich, United States Circuit Judge for the Tenth Circuit, The Problem with Pretext, 85 Denv. U.L.Rev. 503, 506-07 (2008). The Supreme Court’s
description of this step ... is similar to a description of the analysis a court would undertake in evaluating the sufficiency of the evidence in a non-Title VII case: The plaintiff “may succeed in [proving discrimination] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence.”
Id. at 507 (quoting Tex. Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The plaintiffs burden at this stage should be no greater than the summary judgment standard requires, i.e., showing that genuine issues of material fact remain that are worthy of the truth-finding machinery of a civil trial by jury.
The court concludes that although Torgerson and Mundell established a prima face , case of discrimination, see supra Part II.E., they failed to satisfy the third step of the McDonnell Douglas test, i.e., they failed to set forth sufficient evidence to create genuine issues of material fact as to whether the City’s proffered nondiscriminatory justification for not hiring them— that they “scored significantly lower than other candidates” and “were lacking in qualifications as compared to the higher ranking candidates” — were pretextual, see supra Part II.E.1-6. In reaching this conclusion, the court, “[r]ather than concentrating on what should be the focus of attention — whether the evidence supports a finding of unlawful discrimination — ... focus[es] on the isolated components of the McDonnell Douglas framework, losing sight of the ultimate issue.” Wells v. Colo. Dep’t of Transp., 325 F.3d 1205, 1224 (10th Cir.2003) (Hartz, J., concurring).
In evaluating the plaintiffs evidence of pretext, we should “focus on the issue of the employer’s discriminatory motives.” Tymokovich, supra, at 517. We should be wary of allowing “categories of pretextual evidence [to] divert [our] attention ... away from the ultimate issue in every case: whether the adverse employment decision resulted from the employer’s unlawful discrimination.” Id. at 518-19. Put another *1056 way, we should not “compartmentaliz[e]” evidence or “look[] at categories of evidence narrowly.” Id. at 519. Viewing the totality of the evidence, Torgerson and Mundell have identified at least three disputed issues of material fact as to whether the City’s proffered nondiscriminatory justifications for not hiring them were pretextual. These disputed issues of fact are for the jury — not this court — to resolve. See Quick, 90 F.3d at 1376-77.
First, a reasonable jury could construe Commissioner Field’s[10] comment regarding the SAFER grant as discriminatory. When Council Member Carr informed Commissioner Field that, by accepting the SAFER grant, the City “stipulated [that] you hire women and minorities,” Commissioner Field replied, according to Council Member Carr, that “had I known, I would have recommended that the City not take the grant. He said [to Council Member Carr that] the City should never have taken the grant if that was the stipulation.” The court usurps the jury’s function by construing this comment in the light most favorable to the City, not Torgerson and Mundell. The court interprets Commissioner Field’s comment as nondiscriminatory because “Congress explicitly commands that Title VII shall not be interpreted to require preferential treatment because of sex or national origin on account of an imbalance in the number or percent of those employed, compared to the relevant number or percent in the community.” See supra Part II.C.l. Thus, according to the court, Commissioner Field’s comment must be interpreted as merely evidencing his disagreement with the mandatory hiring of persons based on their sex or national origin. That may well be what he intended, but a reasonable jury with the benefit of cross-examined testimony from Commissioner Field could also interpret the comment as indicating that Commissioner Field was opposed to hiring women and minorities under any circumstances, mandatory or otherwise. Ultimately, a jury— not this court — should determine Commissioner Field’s intended meaning. See Quick, 90 F.3d at 1376-77. Delving into Commissioner Field’s thought processes and explaining away his comment so as to avoid any inference of discriminatory animus is inappropriate and in direct conflict with the summary judgment standard.
Second, a reasonable jury could infer discriminatory animus from Fire Chief Kapler’s comment that he found Torgerson and Mundell “unfit.” Fire Chief Kapler made the statement to Council Member Carr at a June 2006 meeting to discuss hiring more firefighters. Carr opined that the City should not hire anyone else under the SAFER grant, lest a minority candidate not hired hail the City to court. Fire Chief Kapler allegedly responded that he interviewed Torgerson and Mundell and “found them unfit.” The court “credits Carr’s testimony that three months after the hirings, Fire Chief Kapler said, T found them unfit.’ ” See supra Part II. E.4.
Viewing the facts in Torgerson and Mundell’s favor, the court also concludes that they have “demonstrate[d] an admission by Kapler that, to quote their brief, ‘they were not mentally or physically fit for duty, even though they had passed the required physical agility test and the City’s background check.’ ” Id. But while *1057 the court admits that “Torgerson and Mundell have identified a factual dispute,” it concludes that this “dispute as to what Kapler said to Carr is not material” because “[e]veryone involved in this case— Torgerson, Mundell, and all the City officials, except Kapler once (according to Carr) — agreed that they were qualified to be firefighters.” Id. (emphasis added in part). This statement indicates precisely why Fire Chief Kapler’s purported comment is material — because Fire Chief Kapler, on at least one occasion, commented that Torgerson and Mundell, both minority candidates, were “unfit” in discussing the recent hirings, the SAFER grant, and the protected-group candidates. In his deposition, Fire Chief Kapler skirted the issue of why he might have called Torgerson and Mundell “unfit,” merely explaining how he “use[s] the word fit” without then applying that definition to Torgerson and Mundell. He then admitted that “they’re on our list as qualified candidates, so, yes, they’re qualified to be firefighters.”
Fire Chief Kapler’s intent in using the term “unfit” and its intended meaning are questions of fact for the jury to determine. At oral argument, the City’s counsel argued that Fire Chief Kapler
explained [in his deposition] that the term “fitness” is used in [Minnesota’s] civil service statute that talks about full examinations of candidates to determine their relative fitness for positions, firefighter positions, and he explained [that] he used the term “fit,” meaning “fit for the final three and the rule of three to be certified,” not meaning that they were “unqualified.”
When asked where in the record Fire Chief Kapler explained the use of the term “unfit” in terms of the rule of three, counsel conceded that Fire Chief Kapler did not cite the rule of three. Before a jury, the City’s counsel would be free to argue to a jury that this was Fire Chief Kapler’s intent in using the term “unfit.” But on a motion for summary judgment, the court should not credit Fire Chief Kapler’s proffered explanation of his use of the word. Moreover, Fire Chief Kapler never explained why, during a discussion of the SAFER grant and protected-group candidates, he might have referred to Torgerson and Mundell as “unfit” even though— by his own admission — they are “qualified.” Torgerson and Mundell are entitled to reasonable inferences drawn in their favor. A jury — not this court — -should determine the meaning and credibility of Fire Chief Kapler’s explanation after a trial on the merits.
Third, a reasonable jury could draw an inference of sex discrimination from Commissioner Withers’s purported comment that he wanted to hire Candidate 3 — the convicted felon — because “he was the absolute big, strong firefighter type” or “he was a big guy and that he’d make a good firefighter.” The district court concluded that Commissioner
Withers made the statement while justifying the appointment of a convicted felon to a firefighter position. Withers’s statement is devoid of reference to women, and according to Carr, Withers did not indicate that he had any concerns about a female’s ability to meet the physical demands of firefighting. Wither[s]’s observation that a candidate was a “big guy” and assessment of the candidate’s potential as a firefighter in defense of the decision to appoint the candidate is not evidence of discriminatory animus toward women.
(Emphasis added.) Similarly, the majority concludes that “[t]he ‘big guy’ statement does not relate to Mundell, or to the abilities of female applicants, and thus is not direct evidence of discrimination.” Part II.C.2.
*1058 But Commissioner Withers’s comment, on its face, references gender, as he purportedly stated that Candidate 3 “was a big guy.” Undisputedly, Mundell is not a “big guy.” A jury could certainly infer that Withers’s comment was harmless and made during a conversation defending the hiring of Candidate 3. But a jury could also reasonably infer a discriminatory animus from the comment, reasonably construing the comment as indicating that Commissioner Withers’s idea of a model “firefighter type” is a “big, strong” “guy.”
“[W]eigh[ing] the evidence, mak[ing] credibility determinations, [and] attempt[ing] to determine the truth of the matter” is the function of the jury. Quick, 90 F.3d at 1376-77. Here, the court has usurped the jury’s role by conclusively resolving disputed genuine issues of material fact. Looking at the evidence as a whole — and not considering each piece of evidence in a vacuum — I find that Torgerson and Mundell have produced sufficient evidence that material fact issues remain as to whether the City’s reasons for not hiring them were pretextual. Summary judgment serves an important efficiency function by resolving cases lacking material factual dispute by more efficient means than a trial. However, where material factual disputes exist, especially those which turn on evaluation of witness credibility, it is no injustice to permit the matter to be tried.
Accordingly, I would affirm the district court’s dismissal of Torgerson’s § 1981 claim but reverse the grant of summary judgment on Torgerson and Mundell’s Title VII claim and remand to the district court for further proceedings.
Appendix
Smith v. Fairview Ridges Hosp., 625 F.3d 1076, 1082 (8th Cir.2010) (“sparingly,” “very close,” affirming).
Chism v. Curtner, 619 F.3d 979, 983 (8th Cir.2010) (“sparingly,” affirming).
Colenburg v. Starcon Int’l, Inc., 619 F.3d 986, 992 (8th Cir.2010) (“sparingly,” affirming).
Wisbey v. City of Lincoln, 612 F.3d 667, 671 (8th Cir.2010) (“sparingly,” “particularly deferential to the nonmovant,” affirming).
Dixon v. Pulaski County Special Sch. Dist., 578 F.3d 862, 867 (8th Cir.2009) (“sparingly,” affirming).
Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 871 (8th Cir.2008) (“seldom,” affirming).
King v. Hardesty, 517 F.3d 1049, 1057 (8th Cir.2008) (“sparingly,” affirming in part, reversing in part).
Devin v. Schwan’s Home Serv., Inc., 491 F.3d 778, 785 (8th Cir.2007) (“seldom,” affirming).
Higgins v. Gonzales, 481 F.3d 578, 584 (8th Cir.2007) (“seldom,” affirming).
Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC, 471 F.3d 843, 845^46 (8th Cir.2006) (“sparingly,” affirming).
Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1117, 1118 (8th Cir.2006) (“sparingly,” “with caution,” reversing).
Simpson v. Des Moines Water Works, 425 F.3d 538, 542 (8th Cir.2005) (“disfavored,” affirming).
Bass v. SBC Commc’ns, Inc., 418 F.3d 870, 873 (8th Cir.2005) (“seldom,” affirming).
Rodgers v. U.S. Bank, N.A, 417 F.3d 845, 850 (8th Cir.2005) (“seldom,” affirming).
Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1034-35 (8th Cir.2005) (“seldom,” affirming in part, reversing in part).
Pope v. ESA Servs., Inc., 406 F.3d 1001, 1006 (8th Cir.2005) (“seldom,” affirming).
*1059 Peterson v. Scott County, 406 F.3d 515, 520 (8th. Cir.2005) (“seldom,” affirming in part, reversing in part).
Williams v. Missouri Dep’t of Mental Health, 407 F.3d 972, 975 (8th Cir.2005) (“seldom,” affirming).
Stidham v. Minnesota Mining & Mfg., Inc., 399 F.3d 935, 937 (8th Cir.2005) (“seldom,” affirming).
Woods v. Perry, 375 F.3d 671, 674 (8th Cir.2004) (“sparingly,” affirming).
Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1024 (8th Cir.2004) (“seldom,” affirming).
Wheeler v. Aventis Pharm., 360 F.3d 853, 857 (8th Cir.2004) (“with caution,” affirming).
Turner v. Honeywell Fed. Mfg. & Techs., LLC, 336 F.3d 716, 720 (8th Cir.2003) (“sparingly,” affirming).
Mayer v. Nextel W.Corp., 318 F.3d 803, 806 (8th Cir.2003) (“seldom,” affirming).
EEOC v. Liberal R-II Sch. Dist., 314 F.3d 920, 922 (8th Cir.2002) (“seldom,” reversing).
Jacob-Mua v. Veneman, 289 F.3d 517, 520 (8th Cir.2002) (“cautiously granted,” affirming).
EEOC v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir.2001) (“particularly deferential to the nonmovant,” affirming).
Luciano v. Monfort, Inc., 259 F.3d 906, 908 (8th Cir.2001) (“sparingly,” affirming).
Simmons v. Neio Pub. Sch. Dist. No. Eight, 251 F.3d 1210, 1218 (8th Cir.2001) (“sparingly,” reversing).
Heaser v. Toro Co., 247 F.3d 826, 830 (8th Cir.2001) (“seldom,” affirming).
Bradley v. Widnall, 232 F.3d 626, 630-31 (8th Cir.2000) (“sparingly,” affirming).
Mems v. City of St. Paul, 224 F.3d 735, 738 (8th Cir.2000) (“seldom,” reversing in part, affirming in part).
Whitley v. Peer Review Sys., Inc., 221 F.3d 1053,1055 (8th Cir.2000) (“sparingly,” affirming).
Kampouris v. St. Loids Symphony Soc., 210 F.3d 845, 847 (8th Cir.2000) (“particularly deferential” to the nonmovant, affirming).
Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 830 (8th Cir.2000) (“seldom,” reversing in part, affirming in part).
Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir.2000) (“seldom,” reversing) (citing cases).
Bell v. Conopeo, Inc., 186 F.3d 1099, 1101 (8th Cir.1999) (“particularly deferential” to the nonmovant, reversing).
Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir.1999) (“seldom,” affirming in part, reversing in part).
Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir.1999) (“seldom,” affirming in part, reversing in part).
Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 486-87 (8th Cir.1998) (“seldom,” reversing).
Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir.1998) (“seldom,” reversing).
Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205 (8th Cir.1997) (“seldom,” “particularly deferential” to the nonmovant, affirming).
Duffy v. Wolle, 123 F.3d 1026, 1033 (8th Cir.1997) (“seldom,” affirming).
Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 615-16 (8th Cir.1997) (“seldom,” affirming).
Chock v. Nw. Airlines, Inc., 113 F.3d 861, 862 (8th Cir.1997) (“sparingly,” affirming).
Smith v. St. Louis Univ., 109 F.3d 1261, 1264 (8th Cir.1997) (“seldom,” reversing).
Webb v. Garelick Mfg. Co., 94 F.3d 484, 486 (8th Cir.1996) (“particularly deferen *1060 tial” to party alleging discrimination, reversing).
London v. Nw. Airlines, Inc., 72 F.3d 620, 624 (8th Cir.1995) (“sparingly,” affirming in part, reversing in part).
Wilson v. Infl Bus. Machs. Corp., 62 F.3d 237, 240 (8th Cir.1995) (“seldom,” affirming).
Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 762 (8th Cir.1995) (“seldom,” affirming).
Davis v. Fleming Cos., Inc., 55 F.3d 1369, 1371 (8th Cir.1995) (“sparingly,” reversing).
Oldham v. West, 47 F.3d 985, 988 (8th Cir.1995) (“seldom,” reversing).
Hardin v. Hussmann Corp., 45 F.3d 262, 264 (8th Cir.1995) (“sparingly,” reversing).
Weissman v. Congregation Shaare Emeth, 38 F.3d 1038, 1045 (8th Cir.1994) (“seldom,” reversing).
Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir.1994) (“seldom,” reversing in part, affirming in part).
Gill v. Reorganized Sch. Dist. R-6, 32 F.3d 376, 378 (8th Cir.1994) (“with caution,” affirming).
Sweeney v. City ofLadue, 25 F.3d 702, 703 (8th Cir.1994) (“seldom,” affirming).
Kehoe v. Anheuser-Busch, Inc., 995 F.2d 117, 120 (8th Cir.1993) (“very close,” reversing).
Weber v. Am. Express Co., 994 F.2d 513, 515-16 (8th Cir.1993) (“seldom,” affirming).
Johnson v. Minnesota Historical Soc’y, 931 F.2d 1239,1244^5 (8th Cir.1991) (“seldom,” “sparingly,” affirming in part, vacating in part).
Haglof v. Nw. Rehab., Inc., 910 F.2d 492, 494-95 (8th Cir.1990) (“seldom,” reversing).
Hillebrand v. M-Tron Indus., Inc., 827 F.2d 363, 364 (8th Cir.1987) (“sparingly,” “seldom,” affirming in part, reversing in part).

. While the court expresses its doubt that Commissioner Field was a decisionmaker in the hirings, it assumes that he was a decision-maker, noting that "Commissioner Field did vote to certify the ranked eligibility list, signed 10 (of 15) recommendation forms, participated in Commission meetings during the process, and many acts were done in the name of all three Commissioners, including him.” See supra Part II.C.l.